## ALTON R. ARNOLD, EXECUTOR, *vs.* JOSEPH O. FOW-LER.

*When Execution Creditor Directing Levy to be Made in Improper Manner is Liable to Sheriff Held Responsible Therefor to Judgment Debtor—Execution Levied on Perishable Goods—Notice of Sale.*

When a judgment creditor directs the sheriff to levy an execution upon certain property or in a certain manner, and the sheriff in following the instructions does an act which he does not know to be unlawful, but in consequence of which he is obliged to respond in damages to the defendant in the execution, the sheriff is entitled to recover such damages from the judgment creditor, even in the absence of a bond of indemnity or an express contract to indemnify.

A judgment creditor directed the sheriff in executing a *fi. fa.* to levy upon
a certain growing crop of peaches.   In an action by the judgment debtor
against the sheriff on his bond the latter was held to be liable because
the levy was made in an oppressive manner which resulted in the loss
of the crop.   The sheriff afterwards confessed judgment for a certain
sum and paid the same and then brought this action to recover from
the judgment creditor the amount so paid, alleging a contract to in-
demnify him.   The defendant contended that the contract of indemnity
was illegal and void because it provided for the shipment and sale of
the peaches levied on in violation of Code, Art. 83, sec. 3, relating to
the place and notice of execution sales.   *Held,* that the contract was not
illegal, no sale having been made in violation of the statute and the ex-
ecution creditor having released the crop from the levy, before any
shipment thereof was made.

Code, Art. 83, sec. 3, provides that ten days' notice of an execution sale
shall be given.   *Held,* that in the case of a levy upon perishable goods,
such as a crop of peaches, it is the duty of the sheriff to obtain au-
thority from the Court to make an immediate sale at such place as is
advantageous for all parties interested.

Appeal from the Circuit Court for Anne Arundel County
(REVELL and REIFSNIDER, JJ.)

The plaintiff's first prayer, which was granted, declared that
if it should be found as facts that the plaintiff, as sheriff, under
the instruction of the defendant, levied the writ of *fi. fa.* on
the growing crops of the execution debtor, Wilson, the de-
fendant agreeing that he would order and arrange for the
hands and teams to gather the crop of peaches, and that before
the day fixed by defendant for gathering the peaches, the
defendant instructed plaintiff to release the crop so levied on
from the operation of the writ, which plaintiff forthwith did;
that thereafter Wilson brought an action on the official bond
of the plaintiff as sheriff for alleged losses sustained by Wilson
in his peach crop during the time that the same was subjected
to said levy, and for making an excessive levy in the premises,
that the defendant, Arnold, had notice of said action, was pres-
ent at the trial thereof, and assisted in its defense by counsel
retained and paid by him; that the plaintiff, the said Fowler,
contested said action both in the lower Court and in the Court
of Appeals; that the lower Court practically took the case from
the jury on question of law, but that the said Wilson took an

appeal, and the Court of Appeals reversed the lower Court and sent the case back for a new trial; that the said Arnold, thereupon, refused any further to contribute to the defense of the said suit of Wilson against the bond of the said Fowler, that thereafter Fowler, on the advice of the Hon. Robt. Moss, the attorney who had been paid in the case of Wilson against said bond, by the said Arnold, compromised the suit of Wilson against him and his bond by confessing a judgment therein in favor of Wilson for $250, and costs of suit, which judgment Fowler, the plaintiff in this suit, has paid, together with certain costs of suit in said case of Wilson, both in the lower and in the higher Court, and certain counsel fees incurred therein; and if the Court shall further find from the evidence that the said compromise was judicious and reasonable, so far as the said defendants in the said compromised action were concerned, and shall further find that the said Fowler and his deputy, in their proceedings under the said *fieri facias*, acted in good faith and without any design or intention of violating the law, or of injuring the defendant in said execution, but on the contrary, as the said Fowler and his deputy honestly believed, by the lawful authority and direction of the said Arnold, the judgment creditor therein, then the plaintiff in this action is entitled to recover the amount so paid by him as the judgment, costs and counsel fees in the said suit of Wilson against him and his bond, whether the defendant did or did not expressly promise to indemnify the plaintiff in the premises. (*Granted.*)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE and SCHMUCKER, JJ.

*James M. Munroe,* for the appellant.

The facts stated in the *narr.,* if they constitute a contract of indemnity, express or implied, or a contract of any kind, constitute a contract manifestly unlawful, for surely if the official acts of the sheriff are *properly* done, they create no liability; but if neglected, or *improperly* done, or if in the doing of them discretion is abused, the sheriff and his sureties are liable.

*State, use of Wilson,* v. *Fowler,* 88 Md. 601. We have, therefore, (1) an alleged contract to protect the sheriff against the *evil consequences* of the *proper* performance of his *lawful* duty, which is impossible of execution, *because no evil consequences can result in such a case,* and is, therefore, no contract at all; or else we have (2) an alleged contract to protect the sheriff against the *evil consequences of his unlawful conduct;* for it is only from *such conduct* in the performance of a legal duty that evil consequences can flow. But such contract is null and void, the consideration being illegal. This is not a case of contribution between joint tort-feasors, but a case where the tort-feasor seeks to recover upon a *contract* which he alleges was the *inducement* to the tort committed by him.

Briefly stated, the *narr.* alleges: (*a*) That Arnold instructed Sheriff Fowler to levy upon Wilson's peach crop. (*b*) That Arnold agreed with the sheriff to supply baskets, and labor and teams necessary for properly picking the peaches and hauling them to the wharf, under the supervision and in the name of Fowler, sheriff, the net proceeds thereof to be applied towards satisfaction of the *fieri facias.* (*c*) That as Arnold was a resident of the neighborhood and a raiser and shipper of such fruit, this arrangement was agreed to. (*d*) That Arnold failed to supply the baskets, hands and teams to pick and haul away to the wharf said peach crop. (*e*) That afterwards, Arnold directed the sheriff to release the peach crop from his levy, which he did, and so notified Wilson. (*f*) That the judgment recovered by Wilson against Fowler for his conduct in executing said writ of *fieri facias* was the result of the instructions Arnold gave to Fowler in the premises, and of Arnold's failure to supply the baskets, hands and teams for the purpose aforesaid.

Now the only *instruction* alleged to have been given by Arnold to Fowler was *to levy upon the peach crop.* This was a lawful levy, and the instruction was, therefore, proper. *State, use Wilson* v. *Fowler,* 88 Md. 601.

But the plaintiff converts his "harsh, oppressive and illegal conduct" into a meritorious cause of action against the de-

fendant on these two grounds : (1) because defendant gave plaintiff a lawful instruction as to what he should levy upon ; (2) because defendant declined to furnish teams, &c., to haul away the peaches to a wharf, thence to be shipped for sale, contrary to law. It is idle for plaintiff to say that his *narr.* does not allege the peaches were to be shipped away for sale, and, therefore *non constat*, but that the sheriff was to comply with sec. 3 of Art. 83 of Code, title "Sales and Notices," regulating sales of personal property taken in execution. If the words used in the *narr.* are to be given their usual and ordinary meaning, then the agreement, here the ground of suit, "to pick and haul the peaches to the wharf, in the name and under the supervision of the plaintiff, the net proceeds (of sales) to be applied toward satisfaction of the *fi. fa.* which said *arrangement* was assented to by the plaintiff *because* said Arnold was himself a raiser and *shipper* of such fruit," un-questionably was to pick and haul that fruit to the wharf and *ship it away to be sold, as Arnold did his fruit*, without any re-gard to the provisions of Code, Art. 83, sec. 3. How mean-ingless and illogical it would be to say the agreement was to haul the fruit down to the wharf there to be sold according to the provisions of the Code, because Arnold was himself also a raiser and *shipper* of such fruit! *Code*, Art. 83, sec. 3, "Sales and Notices ;" 10 *Am. & Eng. Ency.*, 405, title : "In-demnity Contracts,'' paragr. 3, "Illegality," cases cited in Note 1, on page 406.

An agreement to indemnify one from liability for an illegal act is void. *Collins* v. *Blantern*, 1 Smith's Ldg. cases, 689.

The sheriff is required to follow specific instructions as to execution of process, *if he can lawfully do so. Murfree on Sheriffs*, sec. 111A.

Sheriff must follow instruction of plaintiff, if reasonable *and he can lawfully do so ;* from specific instructions to serve a writ in a particular manner, a promise will be implied in law from the plaintiff to the officer to hold the latter harmless of the natural results of obeying his instructions. Hence, it sheriff follows plaintiff's instructions in *doing an act not known*

*to him to be unlawful* and is thereafter compelled to respond in
damages because of the act, he may recover from plaintiff the
amount so recovered from him.   *Murfree on Sheriffs,* p. 463,
sec. 890A ; 2 *Freeman on Executions,* sec. 275.

In this case Fowler is not suing Arnold for the consequences
which befell· him (Fowler) in carrying out the plaintiff's in-
structions as to the making of the levy and the manner of ex-
ecuting the writ ; but he is suing him for the consequences of
Arnold's failure to supply him with the means agreed upon,
as alleged, to carry out his instructions as to the execution of
the writ.   It is not alleged that he (Fowler) executed the writ
as instructed by Arnold and agreed upon between them, but
it is alleged that Fowler did not execute the writ as instructed
and agreed upon because Arnold failed to supply the means
thereto.   This, therefore, is a very different case and presents
the question whether or not Arnold is responsible for failure
to provide the means to enable the sheriff to execute a writ
in a manner known to the sheriff at the time to be unlawful.

The defendant's first prayer is a demurrer to the evidence,
asking the Court to rule that, under the pleadings in the case,
there is no evidence legally sufficient to entitle the plaintiff to
recover in this action.   If the *narr.* states a good cause of
action, and if the plaintiff is entitled to recover in this action
at all, then it must be because Arnold made an agreement
with Fowler to furnish the means to enable him to pick and
haul away the peaches but failed to keep his agreement, and
that as a result of Arnold's failure so to do, Fowler was un-
able to pick the peaches and suffered damage on that account.
It is respectfully contended that there is not a word of testi-
mony in the Record to support such a contention.

*J. Wirt Randall* (with whom was *Daniel R. Randall* on the
brief), for the appellee.

Directions and orders carried out establish the relation of
principal and agent and raise an implied promise to indemnify
against the consequences of obeying the instructions ; even
where there is no duty on the part of the supposed agent to

obey the orders of the technical principal. *Bullen's N. P.*, 146; *Murfree on Sheriffs*, sec. 621 (p. 292); 1 *Parsons on Contracts*, (8th ed.) p. 35; *Merryweather* v. *Nixon*, 8 Term R. 186; *Adamson* v. *Jarvis*, 4 Bingham, 66, 72; *Betts* v. *Gibbins*, 2 Adol. & Ellis, 57, 64, 73; *Woolley* v. *Battle*, 2 Car. & P. 417; *Jacobs* v. *Pollard*, 10 Cush. 287–8, &c.; *Drummond* v. *Humphreys*, 39 Me. 347; *Dugdale* v. *Levering*, Law Rep. 10 Com. Pl. 199.

But if a mere stranger, who is under no obligation to obey such orders, but who does so to his detriment, is thus protected by an implied promise to indemnify ; how much more should an officer, whose duty it is to obey the commands of the execution creditor, be so protected ? For the execution creditor's control over his execution is almost absolute. He directs its issuance; he may direct that it be temporarily suspended ; enforced or not enforced ; what levied upon and how proceeded with. The officer is bound to follow the instructions of the execution plaintiff, or his attorney, and refuses or neglects so to do at his peril. *Murfree on Sheriffs*, sec. 111A, (bottom p. 67, q.) (1890 ed.); *Evans' Practice*, 485; *Kent* v. *Richards*, 4 Md. Ch. 395; *Sasscer* v. *Walker*, 5 G. & J. 109; *Root* v. *Wagner*, 30 N. Y. 9, 17; *Ball* v. *Badger*, 6 N. H. 409.

Of course the sheriff could recover if a bond of indemnity had been asked for and given him,—even if the execution had been levied on the goods of an entire stranger (the usual case for a bond), but a parole promise to indemnify is equally effective. 1 *Viners Ab.*, 299, sec. 27; *Murfree on Sheriffs*, secs. 635A, 635, 685; *Stone* v. *Hooker*, 9 Cow. 154; 4 *Robinson's Practice*, 350, 356; *Cook* v. *Merrifield*, 139 Mass. 139; *Avery* v. *Halsey*, 14 Pick. 174; *Coventry* v. *Barton*, 17 Johns, 142.

But in the absence of a bond of indemnity or an express promise to indemnify, there is an *implied promise in law* from the execution plaintiff to the officer, to hold the latter harmless from the natural results of obeying the instructions of the plaintiff as to the mode of executing the writ. *Murfree on Sh'ffs* (1890 ed.), bottom p. 463, sec. 890A ; *Ibid*, sec. 621, bottom p. 292; 2 *Freeman on Executions* (2nd ed.), sec. 275, (end) p. 894; *Humphreys* v. *Pratt*, 5 Bligh, 154, (164); *Stoyel*

v. *Cady*, 4 Day (Conn.), 226; *Bailey* v. *Bussing*, 28 Conn. 455; *Gower* v. *Emory*, 18 Maine, 79, 82, 83; *Sanders* v. *Hamilton*, 3 Dana (Ky.), 550; 2 *Hilliard on Torts* (4th ed.), p. (top) 170; 2 *Greenleaf's Ev.* (15th ed.), sec. 115; *Simpson* v. *Mercer*, 144 Mass. 413, 414.

The general doctrine has been fully recognized in our own State. *Craig* v. *Aukeny*, 4 Gill, 225; *Smith* v. *Anderson*, 18 Md. 520; *Richardson* v. *Hall*, 21 Md. 404; *Percy* v. *Clary*, 32 Md. 246; *Corner* v. *Mackintosh*, 48 Md. 386; *C. &. O. Canal Co.* v. *Co. Comrs. Al. Co.*, 57 Md. 224.

This Court in *Wilson* v. *Fowler*, *supra*, held that a growing crop of peaches was taken in execution lawfully ; that it was an act done *virtute officii* and not *colore officii ;* it is also held, however, that if the officer having thus made a lawful levy on a growing crop, neglects to gather and ship, so that the crop is lost or destroyed, he thereby executes the writ in a wrongful and oppressive manner, and his bond is responsible. It was the delay, the neglect to pick and handle the peaches, that caused the loss to Wilson ; it was that for which he sued Fowler and his bond, and for which Fowler had to pay him damages ; and that delay and neglect, the testimony proves conclusively, were Arnold's defaults. He, as the execution creditor interested, had a right to delay or suspend the execution of the writ, which he did until the Monday following the Thursday on which it was levied. He had a right to discharge or release the peach crop from the levy, which he did by going before sunrise on the intervening Saturday to his attorney's house in Annapolis and ordering the peaches released from the levy.

The appellant took the whole management of his execution absolutely into his own hands, from its levy to its dismissal ; and then admitted his responsibility through his counsel and by his words and actions at the trial of the suit on the bond. To make the officer under these circumstances the one who is ultimately to bear the loss ; on the ground of *pari delicto* would seem to be most unfair and unreasonable·

The appellant contends also that after the case of Wilson

against the bond was sent down by this Court for a new trial, Fowler *confessed* a judgment in it in favor of Wilson, instead of fighting it; and that Arnold should not be bound by a judgment so confessed. The evidence of Fowler and of Mr. Moss shows why the case was compromised, and that it was the wisest and, in fact, the only wise thing to do ; the evidence of the witness, John R. Arnold shows that Fowler confessed the judgment for a less amount than Wilson would certainly have recovered against him, if there had been a second trial of the suit on the bond—to say nothing of the additional costs and counsel fees that the new trial would have involved. Whatever one may be compelled to do by suit, he may do without suit, or contested suit, and be in no worse position to recover over. *Murfree on Sheriffs*, sec. 895; *Betts* v. *Gibbins.* 2 Adol. & Ellis, 57; *Randall* v. *Kaper*, 96 Eng. C. L. 88; *Train* v. *Gold*, 5 Pick. 387; *Gray* v. *Boston Gas Lt. Co.*, 114 Mass. 153.

Fowler was also entitled to recover from Arnold in this case the counsel fees and costs which he had paid in defending Wilson's suit on his bond in both Courts. *C. & O. Canal* v. *Co. Commrs.*, 57 Md. 224; *New Haven* v. *Northampton Co.*, 117 Mass. 437.

Fowler, J., delivered the opinion of the Court.

The late Thomas H. Arnold, of Anne Arundel County recovered a judgment for $148.29 against Samuel T. Wilson of the same county and caused a writ of *fieri facias* to be issued thereon. The writ was executed by Joseph O. Fowler, then sheriff of said county, and the judgment debtor, the said Samuel T. Wilson, subsequently brought suit on the sheriff's official bond and after failing to recover in the Circuit Court he took an appeal to this Court, and it was held in the case of *Wilson* v. *Fowler*, 88 Md. 602, that he was entitled to recover damages for the illegal and oppressive, because excessive, levy made upon his growing peach crop. Accordingly the judgment of the lower Court was reversed and the cause was remanded for a new trial. However, before a second

trial was had the parties to that suit agreed to a compromise and the defendant in that suit, who is the plaintiff and appellee in this case, confessed judgment for the sum of $250 and paid the same. Thereupon said plaintiff in this suit sued the said judgment creditor, to recover damages to indemnify him for loss suffered and sustained by reason of the execution of the *fieri facias* above mentioned in accordance with the directions and instructions of said execution creditor. The defendant interposed a demurrer to the *narr.*, which having been overruled, he pleaded, and issue having been joined, the case was by agreement tried before the Court without a jury. At the conclusion of the plaintiff's testimony the defendant filed demurrer thereto which was overruled. At the conclusion of the whole testimony the plaintiff offered one prayer and the defendant two. The Court granted the plaintiff's prayer and rejected the two offered by the defendant—and judgment having been given for the plaintiff, the defendant has appealed. The first question, therefore, which is presented by this appeal arises on the demurrer to the *narr.*

The declaration contains two counts—the first being based upon an express agreement of the defendant " to save harmless and indemnify the plaintiff from any loss or damage on account of the plaintiff's proceedings aforesaid under said writ of *fieri facias* and in the premises ; that the said Arnold urged this plaintiff to contest the aforesaid action brought by the said Wilson, both in the Circuit Court and the Court of Appeals, and promised to stand by this plaintiff and to save him from loss and injury by reason of said action against this plaintiff's bond." The second count is based upon an implied contract on the part of the defendant, Arnold, to indemnify the plaintiff.

The general principle is well settled that when a sheriff under instructions of the judgment creditor makes a levy in the manner and upon the property directed by him, the sheriff may, if he does not knowingly act in an unlawful and illegal manner recover damages from the judgment creditor to indemnify him even in the absence of a bond of indemnity or an express contract to indemnify. Thus in section 275 of 2 *Free-*

*man on Execution* it is said " if the sheriff follows the plaintiff's directions in doing an act not known to him to be unlawful, and is thereafter compelled to respond in damages because of the act, he may recover from the plaintiff the amount so recovered from him."

So far from the levy in question having been in itself wrongful or illegal, we held in 88 Md. 601 that a growing crop of peaches or other fruit requiring periodical cultivation are *fructus industriales* and personal property and may be taken in execution as such. The *narr.* alleges that the defendant Arnold gave the plaintiff positive instructions as to what property should be taken in execution, and it is not to be inferred, without any proof to the contrary, that the plaintiff or his deputy knew, what was afterwards decided by this Court, that the levy was executed in an illegal and oppressive manner, because it was excessive. And if excessive it was so because this defendant (Arnold) who is alleged to have known the property, &c., gave directions to the plaintiff to take it under the writ. In section 621, *Murfree on Sheriffs*, it is said : " The general rule is that a cause of action does not arise until there has been some loss suffered by the plaintiff, and upon this principle it has been held that an officer is not entitled to sue an execution plaintiff, upon an implied contract to indemnify him for taking the goods of a third person under an execution against the defendant, until the officer has actually suffered the loss which he apprehended, * * * When an officer sues for an indemnity, his action is in the nature of an action on contract, not in the nature of an action for a *tort*, because there is no right of action between co-trespassers for either contribution or indemnity. The action must be founded on a contract, express or implied, to indemnify the officer against loss, and cannot be sustained until the loss has been suffered." We have thus quoted at length these general observations, because we think the general rule which should govern in cases like the one at bar is therein fairly stated by the learned author. Upon an examination of the *narr.* we think it clearly alleges that the levy was made according to the directions of

the defendant Arnold and, as we have already said, it is not to be supposed that the plaintiff, the sheriff, had knowledge that the value of the property taken was excessive when compared to the amount of the judgment. It follows, therefore, that there was no error in overruling the demurrer to the *narr*.

2. This brings us to a consideration of the rulings upon the prayers. The plaintiff's prayer which was granted is objected to on the grounds that "there was no legally sufficient evidence to find the facts therein stated as the ground of the plaintiff's right to recover in this action ; (2) because there was no evidence in the record to prove the fact that Wilson had recovered damages against this plaintiff for an excessive levy ; (3) because the Court is asked to find that the action of Fowler, as sheriff, in the case against Wilson, was done by the lawful authority and direction of said Arnold, whereas, if it be found that Arnold did give Fowler the instructions alleged they were unlawful ; and lastly, (4) because the prayer asks the Court to find for the plaintiff whether the defendant did or did not expressly promise to indemnify the plaintiff in the premises."

First then, does the record disclose evidence legally sufficient to enable a jury or the Court, if they believe it, to find the facts alleged in the *narr*. Without going into the details of the testimony it is sufficient to say that in our opinion it fully sustains every material averment of the declaration.

Without undertaking to determine whether or not there is any evidence in the record to show that the damages recovered in the former case were for an *excessive levy*, it is sufficient in answer to this objection to say that no special objection was filed to the prayer on this ground, and hence that defect, even if it exists, cannot be taken advantage of here. We do not think the prayer can be properly construed as asking the Court to find that the action of the sheriff in levying the execution, was done by the lawful authority of Arnold ; on the contrary, what it does ask the Court to find was that the sheriff and his deputy *believed* that they were acting by such authority. If they honestly believed, as the prayer puts

it, that they were acting under the lawful authority of Arnold, then the fact which was subsequently ascertained by the decision of this Court in the former case, viz., that the levy so ordered by Arnold was excessive and therefore unlawful, will not prevent a recovery in this case. Nor do we think the prayer is defective because it asked the Court, if it should find all the other facts in the case, to say in effect that it was immaterial whether the promise to indemnify the plaintiff was express or implied. *Murfree on Sheriffs, supra; 2 Freeman on Executions, supra.*

We have already said that in our opinion there is legally sufficient evidence in the case to entitle the plaintiff to recover. Indeed, if the evidence on the part of the plaintiff was believed by the Court it was impossible to arrive at any other conclusion. Hence it follows that there was no error in granting plaintiff's prayer nor in rejecting defendant's first prayer.

Defendant's remaining prayer asks the Court to declare, as matter of law, that the contract alleged in the declaration is illegal. This illegality, as the defendant contends, consists in the supposed fact that the contract provided, contrary to the provisions of the Code, Art. 83, sec. 3, "Sales and Notices," that the peaches after being picked and hauled to the plaintiff's station on the railroad were to be transported to the city of Baltimore. But the contract does not so provide. It is probable that such was the intention, but, if so, such intention never was carried out. But in addition to this, the provisions of sec. 3 as to ten days' notice, as well as to the supposed requirement that the sale should be made in the county where the goods are located when seized in execution cannot be applied to a perishable crop of peaches. It would be the duty of the sheriff to ask and obtain from the Court authority for an immediate sale at such place as it could be effected to the best advantage of all parties interested. Thus it is said in *Poe's Prac.*, sec. 669 : "If the levy is made upon a cargo of perishable articles  *   *   *   *  and the sale is delayed until they become altogether or partially valueless, the plaintiff's right of action against the sheriff for the consequences

of his neglect of duty, will be plain.    The duty of the sheriff, in brief, is to execute the writ promptly and in such a way as will be most advantageous to all parties concerned.''    It is to be presumed that after removing the peaches from the orchard of the defendant to the farm of the plaintiff, the sheriff would, as he was in duty bound, have sought and obtained from the Court the necessary authority to so make the sale as to yield the best possible price.    On the whole case we find no reversible error, and the judgment appealed from will be affirmed.

*Judgment affirmed with costs.*

(Decided January 17th, 1902.)