CASE 57—INDICTMENT AGAINST CHARLES BARNEY FOR FRAUDULENTLY CONVERTING THE PROPERTY OF ANOTHER WITHOUT THE OWNER'S CONSENT.—MAY 5.

## Commonwealth v. Barney.

115  475
f125  250

APPEAL FROM JEFFERSON CIRCUIT COURT, CRIMINAL DIVISION.

DEMURRER TO INDICTMENT SUSTAINED AND THE COMMONWEALTH APPEALS. AFFIRMED.

EMBEZZLEMENT—STATUTE—RULE OF CONSTRUCTION—ENACTING CLAUSE —PART OF ACT—SUFFICIENCY OF INDICTMENT.

Held: 1. Where the meaning of an act is doubtful, that construction will be applied which upholds its constitutionality, if it can be done without violence to the manifest legislative purpose.
2. Laws 1902, p. 151, c. 66, entitled "An act to make it unlawful for a person to fraudulently dispose of the property of another, and to provide a punishment," which provides that any person who shall sell, dispose of, or convert any money, property, or other thing, of value, without the consent of the owner thereof,

shall be punished, etc., was intended to include in the acts inhibited only those that were intentionally fraudulent, and does not violate Const., section 51, which provides that the subject of a law shall be clearly expressed in its title.

3. Constitution, section 51 providing that "no law shall be enacted, the subject of which is not expressed in its title," makes the title or enacting clause, a controlling part of the law to which it applies, and it must be read in connection with the remainder of the act, and as part of it, in determining what the law is.

4. An indictment, though charging an offense in the language of such act, was insufficient where it failed to show the relation in which the accused stood to the person whose property he was charged with having fraudulently converted.

C. J. PRATT, ATTORNEY GENERAL AND M. R. TODD, FOR APPELLANT.

The act under which this indictment was found may be found on page 151, Acts 1902. A demurrer was sustained to the indictment on the ground that said act does not conform to the requirements of section 51 of the Constitution which requires the subject of the act to be expressed in its title.

Manifestly, the object of the Legislature in the passage of this act was to make punishable the unlawful sale or conversion of property by any one, without the consent of the owner. The offense does not exist at common law, and is not an offense technically known as *mala in se*. It is neither embezzlement nor larceny, but unites some of the elements of each.

The subject is the punishment of those who dispose of property without the owner's consent. While ordinarily an evil intent must be shown to exist in order to constitute crime, still there are many offenses created by statute that are *malum prohibitum*, where the intent is not material.

In this case the subject expressed in the title has a logical connection with that expressed in the act, and it is not material whether the offense savors of embezzlement or larceny. We have no right to inquire into the motives of the Legislature. The language of the statute makes a complete offense and the indictment is good.

KOHN, BAIRD & SPINDLE AND BINGHAM & DAVIS, FOR APPELLEE.

(No briefs in the record for appellee.)

OPINION OF THE COURT BY JUDGE O'REAR—AFFIRMING.

This appeal involves the constitutionality of the act of March 21, 1902 (Laws 1902, p. 151, c. 66), fixing a penalty for one's fraudulently converting or disposing of the property of another without the owner's consent. It also involves the sufficiency of an indictment drawn under the act.

The proposition is argued that there is a variance between the title and the body of the act; that the title does not express the subject of the statute, and is therefore violative of section 51 of the Constitution, which provides that "no law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title."

The act under consideration is as follows: "An act to make it unlawful for a person to fraudulently dispose of the property of another, and to provide a punishment therefor.

"Be it enacted by the General Assembly of the Commonwealth of Kentucky:

"Section 1. That any person who shall sell, dispose of or convert to his or her own use or the use of another, any money, property or other thing of value without the consent of the owner thereof, shall be punished by confinement in the penitentiary for not less than one nor more than five years; if the money, property, or other thing of value so sold, disposed of or converted to his or her own use be of the value of twenty dollars or more; or be confined in the county jail for not less than one nor more than twelve months if the value be less than twenty dollars."

Laws 1902, p. 151, c. 66.

It will be observed that the word "fraudulently" is used in the title, but nowhere in the enacting clause of the bill is reference made to intent or purpose of the wrongdoer. From this it is argued by appellee that the Legislature has

Commonwealth v. Barney.

attempted to create the offense, and fix a penalty for one's disposing of another's property, or converting it, without the owner's consent; that such an act is far beyond the scope of the title, which restricts within much narrower bounds the class of acts prescribed by the bill. The title and the body of the statute not being in accord, it is argued that the act is therefore unconstitutional. The contention of the Attorney General is that the body of the act alone controls, that it is fairly stated in the title, and that it was within the power of the Legislature to make the simple transfer or conversion of another's property by one not the owner, without the latter's consent, an unlawful act, and to provide a penalty.

Formerly the titles of legislative acts were not regarded as any part of them. Atty. Gen. v. Weymouth, 1 Amb., 20; Hadden v. The Collector, 5 Wall, 107, 18 L. Ed., 518. At that time acts of Parliament were given their title by the speaker or by the clerk. The courts then disregarded the title, as affording no index of the intention of the law-making body, for the very good reason that that body had nothing to do with the selection of the title. To prevent certain abuses of legislation by the use of misleading titles, many of the States now have constitutional provisions identical or quite similar to ours. Section 51. So that the matter of selecting an expressive and accurate title is committed directly to the Legislature, and its being fairly expressive of the context of the bill is an imperative condition to the validity of the act. It is essentially a part of the act, not only because it has been selected and adopted by the Legislature as one of the tests of their meaning as expressed in the bill, but because the Constitution has made it a part, and the controlling part, of the law to which it applies. It is therefore not only useful, in affording a

fair index of the legislative intent in case of ambiguity in the context, but it must be read in connection with the remainder of the act—as a part of it—in determining what is the law.  If the enacting clause of the act goes beyond the title, only that part that is in harmony with it, and that is fairly embraced by it, can stand.  Cooley's Constitutional Limitations, 170-181; Endlich, Interpretation of Statutes, section 59; Sutherland, Statutory Construction, section 210.  The constitutionality of the act must be sustained, if possible, and therefore, in cases of doubtful terms or meaning, that construction will be applied which upholds the act, if such can be done without doing violence to the manifest legislative purpose.  This is an additional reason why the language, and the whole of it, must be read in connection, including the title of the bill.

That the enacting clause of this statute meant to deal only with fraudulent or wicked conversions of another's property without his consent, we find abundant grounds to sustain, even outside of the expression in the title.  To apply the terms of the act literally would be so far-reaching that quite frequent injustice and absurdity would result. This compels the rejection of that construction.  It is argued for the Commonwealth that motive or intent, not being provided for in the act, are not essential; that many acts are made unlawful by legislative enactment without regard to the actor's intent.  But that statement must be considered subject to its qualifications.  Bishop's New Criminal Law, section 291b.  While in civil actions the *quo animo* with which a thing is done may sometimes be immaterial, we apprehend that generally in legal, as always in moral, contemplation, crime proceeds alone from a wicked mind. For this reason acts of lunatics, idiots and young children, and of those acting under duress or under mistake of fact,

are held to be not criminal. Bishop's New Crim. Law, sections
287-290.  Although some acts are made unlawful apparent-
ly without regard to the intent of the perpetrator, a con-
struction that would make a man guilty regardless of the
question of intent is not to be preferred.  Bradley v. Peo-
ple, 8 Colo., 599, 9 Pac., 783.  A few illustrations taken from
every-day occurrences will serve to further prove that the
Legislature had in mind a fraudulent act as the one con-
stituting the evil to be remedied by the statute under ex-
amination.  A sheriff or tax collector who distrains the
goods of a delinquent debtor or taxpayer "disposes of the
goods of another without the consent of the owner," in
fact.  One who carelessly and without criminal intent com-
mingles the property of another with his own, and then sells
it, would be converting or disposing of the property of an-
other without his consent, and would be civilly liable to the
owner therefor.  Reed v. King (11 R., 95, 615), 12 S. W., 772.
A common carrier who wrongfully withholds goods de-
livered to him for transportation is liable to the owner as
for a conversion, without regard to his good faith in acting
upon the grounds of his belief.  L. & N. R. Co. v. Lawson,
88 Ky., 496, 11 R., 38, 11 S. W., 511.  The plaintiff, in di-
recting the service of an execution or attachment, and the
officer handling it, who levies the writ upon the goods of a
stranger to the writ, or levies upon an excessive quantity,
however honest in belief is their mistake, are liable to the
true owner as for a conversion.  Hale v. Ames, 2 T. B. Mon.,
143, 15 Am. Dec., 150; Hill v. Ragland (24 R., 1053), 70 S.
W., 634; Arnold v. Fowler, 94 Md., 497, 51 Atl., 299, 89 Am.
St. Rep., 444.  Without further multiplying instances, we
may add that any conversion that would support an action
of trover or detinue, would, under the strict construction
contended for, make a crime of many an act innocent

enough, maybe, in intent; for, says Bidlow in Leading Cases on Tort, 428, "It may be laid down, as a general principle, that the assertion of a title to, or an act of dominion over, personal property, inconsistent with the right of the owner, is a conversion." We therefore conclude that the Legislature intended to include in the acts inhibited those only that were intentionally fraudulent. It then follows that the act, thus read, is not violative of section 51 of the Constitution.

The draftsman of the indictment in this case proceeded upon the theory above outlined and sustained. The indictment reads: "The grand jurors of the county of Jefferson, in the name and by the authority of the Commonwealth of Kentucky, accuse Charles Barney of the crime of unlawfully, fraudulently and feloniously converting to his own use money of value, the property of another, without the consent of the owner thereof, committed in manner and form as follows, to-wit: The said Charles Barney, in the said county of Jefferson, on the —— day of July, 1902, and before the finding of this indictment, unlawfully, fraudulently, feloniously, and without the consent of Emma Black, did convert to his own use forty-two dollars, in good and lawful money of the United States, of the value of forty-two dollars, a further description of which is to the grand jurors unknown, the personal property of said Emma Black, with the fraudulent and felonious intent then and there to permanently deprive the said Emma Black of her property therein, contrary to the form of the statute," etc. The circuit court sustained a demurrer to the indictment, and the Commonwealth, by the Attorney General, has appealed, to procure a construction by this court of the statute.

Even as read in entire harmony with its title, the terms

of this statute are very general, and, if liberally construed
and literally applied, would be most comprehensive and far-
reaching. It is true that which is plain needs no interpre-
tation. At first reading this statute may appear plain
enough. But it must be studied, because practically it must
be applied in connection with other statutes of this State.
All criminal laws are necessarily enacted to remedy some
evil existing or anticipated. Such was the situation which
the Legislature had in mind, that it must be deemed to have
taken a comprehensive survey not alone of the hurtful thing
to be corrected, but of the laws already in force tending to,
but which had not fully served that end. The fraudulent
conversion or disposal of the property of another without
his consent goes over a wide range of criminal and civil law.
In venturing a partial definition of fraud, Wharton's Crim.
Law, section 124, says: "The task, often pronounced to be
impossible, of exhaustively defining fraud, will not be here
attempted. It is enough to say that fraud in a general
sense, is the deceitful, unlawful appropriation of the prop-
erty of another, and a fraudulent intent is the intent to
effect such appropriation." The statutes against robbery,
larceny in its two grades, horse stealing, and hog stealing,
and the statute against obtaining property under false pre-
tense, and other similar statutes, seem to amply cover the
range of one's converting the property of another without
the consent of the owner, where the wrongdoer is not in
the lawful possession of the property. But it was early
held that clerks, servants, bailees generally, and particularly
officers and servants of corporations, who were in the right-
ful possession of their master's or bailor's property, were
held not liable criminally for its conversion. To remedy
this defect in the statutory and common law, there was en-
acted in England and in most of the States of this coun-

try the statutes against embezzlement—an offense unknown to the common law.   In Kentucky the legislation covering this subject has been enacted in piecemeal, and has fallen short of the general policy elsewhere prevailing.   For example, we have the statute known as the "Embezzlement Statute" (section 1202, Ky. St.)—against the fraudulent misappropriation by officers, agents, or clerks of banks and incorporated companies of the goods or funds of the bank, or the corporation placed in their charge, or the property of another in their possession for such master.   Section 1203 provides a penalty against fraudulent misappropriation by porters and other servants of common carriers; section 1205 is against the custodian of public bonds, etc., belonging to the State, or any county or other municipality therein; and section 2177 is applicable to innkeepers for similar offenses against the property of their guests.   But until the enactment of the statute now being considered, clerks and servants of individuals not bankers, and not incorporated, and bailees, and others who had come into possession of property rightfully and by reason of some confidence or trust reposed in them by the owner, and who subsequently fraudulently converted it, were held in this State to be guilty only of breaches of trust—not punishable criminally.   Shelburn v. Com., 85 Ky., 173, 8 R., 832, 3 S. W., 7; Clark v. Com. (97 Ky., 76, 16 R., 703), 29 S. W., 973; Com. v. Bull, 5 Ky. Law Rep., 605; Snapp v. Com., 82 Ky., 173, 2 R., 318; Fairleigh v. Com., 5 Ky. Law Rep., 854; Lee v. Com. (8 R., 53), 1 S. W., 4; Barclay v. Breckinridge, 4 Metc., 375.   This was a patent defect in the criminal laws of the State.   The Legislature must have had it in mind most prominently, if not exclusively, in passing this bill.

If the construction be given to the statute, that it included all fraudulent conversions, whether or not done by those

in some relation of trust to the owner, it would be made to embrace not only those classes already adequately provided for by the sections above alluded to, in which in several instances penalties different from those imposed by this statute are provided, but it would include a class of cases which we are slow to believe was within the legislative purpose. Numerous instances of this class may readily occur to the mind. The term "fraud" is so elastic and comprehensive, so difficult of being even defined by the most capable authors and jurists, may be so subtle as to be recognized only with great difficulty and only by technical rules, may exist in some degree more or less pronounced in so many instances in dealing with such varied classes of property, that a practical application of this construction of the statute, as a criminal remedy, would be attended with such manifest uncertainties that we doubt if the Legislature contemplated including this indefinite, if not indefinable, class of fraudulent acts as crimes. It would be more reasonable to suppose that it was intended that these be left to the remedial effect found in the results of civil actions. Nor could the Legislature have purposed to deliberately provide two penalties, entirely different, and dependent alone on the whim or wish of the attorney drafting the indictment, for the one act. There is not a reason to suppose that a mitigation of punishment for these offenses was contemplated either. It must have been, then, to meet the "breach of trust" cases above alluded to, that the statute was provided; thereby making a complete, consistent system of treatment of the subject in hand.

It is argued for appellee that the very vagueness and uncertainty of the true legislative intent to be gathered from this act warrants its rejection by the court, to the end, at least, that the Legislature may provide more clearly what

Commonwealth v. Barney.

it meant to prohibit.  But such is not the rule of construc-
tion, and can not be.  It is for the Legislature to choose its
subjects, and its own mode of expression.  It is for the
court to interpret the language employed so as to carry into
effect the legislative purpose, so far as it may not be un-
questionably at variance with the Constitution.  It may
be said that the work of interpretation must be confined to
the construction of the words of the act.  But that man-
ifestly falls short of the true office of the courts.  The Leg-
islature has used certain language to express its purpose.
It is the purpose, then, that must be sought for.  It will
be presumed at the beginning of such an inquiry that the
language used will probably best show that purpose.  But
if it undoubtedly does not, then to stop further inquiry is
to probably misapply the legislative will, falling short of
its purpose, and, maybe, work a positive and unthought-of
public evil.  The courts, with due regard to the prerogatives
of a co-ordinate branch of government, approach this duty
with caution, and with a proper appreciation of the distri-
bution of the powers of the government.  But statutes of
doubtful meaning must be interpreted, or be subject to final
interpretation, in event of controversy as to their true
meaning, by the courts established by the organic law for
that purpose.  The evil to be corrected, the language of the
act, including its title, the history of its enactment, and the
state of the law already in existence bearing on the sub-
ject, are all properly considered by the courts in arriving
at the legislative intention, because the Legislature must
have resorted to the same means to arrive at its purpose.
As, in construing a contract, its context is considered from
the standpoint and surroundings of the parties when they
made it, so, in construing an ambiguous act of the Legis-
lature, the court will, so far as possible, consider the mat-

ters in hand as if situated with respect thereto as that body was. This may result sometimes in the words used in a statute being transposed, or in some of them being omitted or ignored, or in an interpolation of others where necessary to effect the manifest legislative purpose. Says Endlich, Interpretation of Statutes, 319: "The authorities would seem, rather, to establish that the judicial interpreter may deal with careless and inaccurate words and phrases in the same spirit as a critic deals with an obscure or corrupt text, when satisfied, on solid grounds, from the context or history of the enactment, or from the injustice, inconvenience, or absurdity of the consequences to which it would lead, that the language does not really express the intention." See cases cited in section 293, Id. In Massachusetts the statute against embezzlement carefully enumerated certain classes of persons as intended to be embraced by it. A subsequent statute, somewhat similar to the one here being considered, was enacted. The question whether one, though embraced by its terms, literally construed, was guilty, was under consideration in Com. v. Thomas Hays, 14 Gray, 62, 74 Am. Dec., 662. The court held that the latter act was probably designed to meet a deficiency in the former act, as shown by a recent decision of the court, and that it should be construed in that light. It was therefore held that, to sustain a conviction under it, there must exist "the element of a trust or confidence reposed in a person by reason of the delivery of property to him, which he voluntarily takes for safekeeping, and which trust or confidence he has violated by the wrongful conversion of the property. Beyond that the statute was not intended to go."

We conclude that it was the purpose of the Legislature, in the enactment of this statute, to include in the statutes

Commonwealth v. Barney.

against embezzlements that class of persons in possession
of another's property by reason of some fiducial relation
hitherto held to be not embraced by the existing laws.
As embezzlement is that sort of statutory larceny com-
mitted by servants and other like persons where. there is
a trust reposed, and therefore where there is no trespass,
the main ingredient of which is the fraudulent motive of
the fiduciary in depriving one who trusted him of his (the
owner's) property without his consent, it is not material
that the word "embezzle" should be used in the statute.
·When the act is sufficiently described, it will be classified,
not by its designation, but by its constituent elements.
The indictment in this case should have shown, therefore,
the relation in which the accused stood to the person whose
property he is charged with having fraudulently converted.
If it had been shown that he obtained the money from the
owner because of any special.confidence or trust reposed
in him by her, as being her servant, agent, or the like, the
applicability of the statute would be beyond question.

Generally an indictment for a statutory offense is suffi-
cient if it follows the words of the statute. But this is
only where the words used in the statute are sufficient to
describe every fact essential to constitute the offense;
otherwise it is not. Com. v. McCrory, 3 Ky. Law Rep.,
241; Com. v. Stout, 7 B. Mon., 247; Com. v. Shaurer, 4 Ky.
Law Rep., 343.

The indictment in this case, not containing all essential
averments, failed to state an offense, and the demurrer was
therefore properly sustained. Judgment affirmed.