## Richard V. Wood v. Commonwealth.

(Decided May 14, 1929.)

ARTHUR B. BENSINGER, JAMES P. EDWARDS, TRABUE, DOOLAN, HELM & HELM and BOOTH & CONNER for appellant.

J. W. CAMMACK, Attorney General, and JAMES M. GILBERT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Reversing.

On March 2, 1928, George T. Wood and Richard V. Wood were indicted in the Jefferson circuit court, under section 1358a, Kentucky Statutes, for the crime of fraudulently converting to their own use property of value more than $20 without the consent of the owner. They moved for a separate trial. The commonwealth elected to try Richard V. Wood. The trial resulted in a conviction and the fixing of his punishment at imprisonment for four years. He appeals.

The first question presented is, was section 1358a, Kentucky Statutes, which is the act of March 21, 1902, repealed by section 1358b, Kentucky Statutes, which is the act of March 24, 1908? The act of 1902 is in these words:

"An act to make it unlawful for a person to fraudulently dispose of the property of another, and to provide a punishment therefor.

"Be it enacted by the General Assembly of the Commonwealth of Kentucky:

"Section 1. That any person who shall sell, dispose of or convert to his or her own use or the use of another, any money, property or other thing of value without the consent of the owner thereof, shall be punished by confinement in the penitentiary for not less than one nor more than five years; if the money, property, or other thing of value so sold, dis-

posed of or converted to his or her own use be of the value of twenty dollars or more; or be confined in the county jail for not less than one nor more than twelve months if the value be less than twenty dollars." Acts 1902, p. 151.

The act was before this court for construction in Commonwealth v. Barney, 115 Ky. 475, 74 S. W. 181, 24 Ky. Law Rep. 2352. It was there held that the previous statutes did not include agents and fiduciaries having charge of the property of another who converted it to their own use, and that the act was intended to apply to these fiduciaries who were not included under the previous acts, and that it only applied to persons holding the property in a fiducial capacity. It was there also held that the word "fraudulently," which was used in the title of the act, must be read into the body of the act, although not used there, and that the act was only intended to punish the fraudulent conversion of the property of another by a fiduciary. This opinion was delivered at the April term, 1903, and was followed in Com. v. Kelley, 125 Ky. 245, 101 S. W. 315, 30 Ky. Law Rep. 1293, 15 Ann. Cas. 573, decided April 10, 1907. In this condition of things the Act of March 24, 1908, was passed, and is in these words:

"An Act to prevent the sale or transfer of Personal Property where the possession is in one person and the Title thereto is vested in another.

"Be it enacted by the General Assembly of the Commonwealth of Kentucky:

"1. It shall be unlawful for any person having the possession of personal property, the title to which is vested in another to sell or otherwise dispose of such property without the written consent of the person in whom the title is vested. Any person guilty of such offense shall be fined not less than One Hundred Dollars, nor more than Five Hundred Dollars for each offense. Any person having notice of the manner in which such property is held, who shall purchase it of the person having the possession thereof, or of any person, without the written consent of the person in whom the title is vested, shall be fined not less than One Hundred Dollars, nor more than One Thousand Dollars for each offense.

"2. An emergency exists for the immediate operation of this law, therefore, the same shall be in force from and after its enactment.

"Approved March 24, 1908." Acts 1908, p. 40.

It will be observed that this act creates only a misdemeanor. The offense is committed when any person, having possession of personal property, the title to which is invested in another, shall sell or otherwise dispose of such property without the written consent of the person in whom the title is vested. The act of 1902 only applies to fiduciaries having the possession of the property of another. It does not apply to other persons than fiduciaries. The act of 1908 applies to persons who are not fiduciaries. The act of 1902 only punishes the fraudulent conversion of the property of another by the fiduciary to his own use. The act of 1908 punishes the sale or other disposition of the property of another without the written consent of the person in whom the title was vested. The act of 1902 punishes the fraudulent conversion of the property without the consent of the owner. The act of 1908 punishes the sale or disposition of the property without the written consent of the title holder. The two acts are to be read together. Repeal by implication is not favored, and a second act will not be adjudged to repeal a prior act, except it be impossible to permit both statutes to stand. If by fair and reasonable interpretation both acts may be upheld, the latter act will not be regarded as repealing the former by implication. Thomas v. Hurst Home Ins. Co., 186 Ky. 178, 216 S. W. 368; Exall v. Holland, 166 Ky. 315, 179 S. W. 241; State Board of Charities, etc., v. Hays, 190 Ky. 147, 227 S. W. 282; City of Newport v. Klatch, 189 Ky. 305, 224 S. W. 844; Thomas v. McCain, 189 Ky. 373, 224 S. W. 1055.

As was held in Commonwealth v. Barney, 115 Ky. 477, 74 S. W. 181, 24 Ky. Law Rep. 2352, the act of 1902 must be regarded as applicable only to those cases coming within its terms which were not covered by the previous statutes; so the act of 1908 must be held as applicable only to those cases not coming within the act of 1902. The second act is not inconsistent with the first act, but simply covers transactions not covered by that act. The act of 1908 has never been so regarded by the bench or the bar, for the act of 1902 has been enforced since the act of 1908 by this court in the following cases: Com. v. Kelley, 125 Ky. 245, 101 S. W. 315, 30 Ky. Law

Rep, 1293, 15 Ann. Cas. 573; Roland v. Com., 134 Ky. 170, 119 S. W. 760; Dunavant v. Com., 144 Ky. 210, 137 S. W. 1051; Com. v. Holliday, 166 Ky. 381, 179 S. W. 235; Com. v. Weddle, 176 Ky. 780, 197 S. W. 446; Runyon v. Com., 215 Ky. 689, 286 S. W. 1076; Runyon v. Com., 217 Ky. 388, 289 S. W. 244; Com. v. Duvall, 220 Ky. 771, 295 S. W. 1047. While it is true that the question here made was not presented in any of these cases, the fact that it was not presented or considered in any of them is potent evidence that the second act was not regarded as intended to repeal the first. The purpose of the act of 1908 is thus aptly expressed in the title: "To prevent the sale or transfer of personal property where the possession is in one person and the title thereto is vested in another." It simply creates an offense that was not then punished by law, and leaves unaffected the statute punishing the fraudulent conversion by fiduciaries to their own use of the property intrusted to them.

It is also insisted for the defendant that there was a fatal variance between the indictment and the proof heard on the trial. The indictment charges that the defendant "unlawfully, fraudulently and feloniously and without the consent of the owner did convert to their own use property of value, to-wit, five $1,000 7% Gold Bonds of the Republic of Bolivia, due July 1, 1958, the said bonds having been delivered to the said firm of George T. Wood & Son and the said defendants by the said Clarence F. Turner in the form of temporary or interim certificates bearing serial numbers T. M. 11038 to 11042 inclusive, which said certificates, while under the control of said defendants and said firm of George T. Wood and Son, were exchanged for permanent certificates of 7% Gold Bonds of the Republic of Bolivia, due July 1, 1958, bearing serial numbers 12461 to 12465 inclusive, said bonds whether temporary or interim certificates or permanent in form, being of the aggregate value of $5,000."

The proof on the trial showed that the brokers having in charge the selling of the bonds of the Republic of Bolivia, to put them on the market before the bonds were printed, issued temporary certificates which were known in the business as "temporary bonds," although they were in fact only the certificate of the brokers. C. F. Turner had certificates for five $1,000 bonds. He delivered them to the defendants to get the permanent bonds. Permanent bonds were gotten, but were pledged by the defendants to a bank to secure a note they owed

the bank, and so were lost to Turner, being appropriated to pay the note. By section 122 of the Code an indictment must contain "a statement of the acts constituting the offense, in ordinary and concise language, and in such a manner as to enable a person of common understanding to know what is intended; and with such degree of certainty as to enable the court to pronounce judgment, on conviction, according to the right of the case." The papers are described in the indictment just as they were usually described in the trade. They are described exactly as they were described in the receipt which the defendant gave Turner for them, and in the letter which he wrote to the bank asking that they be sent in to obtain the permanent bonds. The facts were so stated as to enable a person of common understanding to know what was intended. Construing section 122 of the Code, in Overstreet v. Com., 147 Ky. 471, 144 S. W. 751, the court said: "An indictment may contain more than is necessary, or it may be phrased in inapt words, or the sentences may be ungrammatically or awkwardly expressed, or the spelling not conform to approved standards, but if, when considered as a whole, the charge is stated with sufficient clearness and certainty to enable a person of common understanding to know what he is charged with, and to enable the court to pronounce judgment, no error in form of expression will make the indictment bad."

To same effect see Hutchcraft v. Com., 195 Ky. 591, 242 S. W. 580, Austin v. Com., 201 Ky. 618, 258 S. W. 86.

The court therefore did not err in overruling the demurrer to the indictment or in overruling the motion for a peremptory instruction on the evidence.

On the calling of the case, the defendant filed his affidavit for a continuance on account of the absence of Henry J. Lynch, who was the defendant's cashier and treasurer, and transacted their business. The court overruled the motion for a continuance, allowing the affidavit to be read as the deposition of the witness, who was at that time sick with the flu and unable to be present in court. The affidavit showed facts sustaining the allegation that the just effect of Lynch's testimony could not be had without his presence in court. The affidavit is too long to be inserted here. One respect in which the defendant was placed at a disadvantage was this: The Commonwealth, to show a fraudulent intent on the part of the defendant, and to contradict the affidavit as to

Lynch's testimony, introduced a number of witnesses testifying to other transactions. The defendant could not know in advance what other transactions the commonwealth would prove, and so he was deprived of the testimony of Lynch in explanation of these transactions, for the affidavit was silent as to these matters.

In addition to this, the commonwealth attorney in his argument referred to the fact that Lynch had testified once before; that what was in the affidavit was not all that he would state; that he had to agree to read the affidavit or submit to a continuance, and had agreed to it for this reason. This was improper. The affidavit being permitted to be read as the deposition of Lynch, it was improper for the commonwealth attorney to argue that Lynch would have testified, if there, to other things not stated in the affidavit. The effect was to get before the jury the attorney's impression of Lynch's former testimony. The defendant did not testify on the trial, and time and again the commonwealth attorney in his closing argument said things that were naturally calculated to call the attention of the jury to the fact that the defendant had not testified; among other things he said: "Suppose Lynch was indicted," and added this: "Do you think with this evidence the affidavit that we have here purporting to be what Lynch would testify to and which we admitted, do you think that Lynch would testify? If it came to a trial of such a case, gentlemen of the jury, the defense of Lynch would be silent. Then Lynch would not take the stand. Lynch would not testify. Lynch would not subject himself to the cross-examination of the commonwealth attorney. Not one iota of evidence would we have against Lynch."

In view of the final argument of the commonwealth attorney and the fact that Lynch was the man who actually conducted the transaction in controversy, and was sick at the time of the trial, and so could not testify, the court is constrained to the conclusion that the substantial rights of the defendant were prejudiced by the refusal of the court to continue the case.

There was no substantial error in the instructions of the court to the jury or in the admission or rejection of testimony, but for the reason above given the judgment must be reversed.

Judgment reversed, and cause remanded for a new trial.

The whole court sitting.