Case  41. — PROSECUTION  BY  THE  COMMONWEALTH
AGAINST TANDY MARTIN FOR MURDER.—October 27.

## Martin v. Commonwealth.

Appeal from Knott Circuit Court.

D. W. GARDNER, Circuit Judge.

Defendant convicted of manslaughter and appeals.
Reversed.

1. Criminal  Law—Continuance—Criminal  Code  Practice,  sec.
189, provides that on an application in a criminal case for
a continuance, based on affidavits stating what the absent
witnesses will testify, the attorney for the Commonwealth,
to prevent a continuance, may admit that such witnesses
would, if present, testify as alleged in the affidavits and
the same may be read in evidence. Held—That where
the prosecuting attorney stated to the jury that such an
affidavit made by defendant was not evidence, but merely
the affidavit of defendant, who was swearing in his own
interest, and the court refused to sustain defendant's motion
for an instruction that the affidavit should be considered
as a deposition of the absent witness, it was error.

2. Admission of Affidavit—Effect—When an affidavit is so ad-
mitted its authenticity is beyond question on that trial. It
must be accepted as if it were the duly signed and certified
deposition of the identical witness named.

J. J. C. BACH and W. W. McGUIRE for appellant.

Upon the calling of this case for trial the defendant filed his
affidavit, stating that he could prove certain facts that were
important evidence in his defense by witnesses who were ab-
sent without his consent or procurement, which the attorney
for the Commonwealth consented should be read as their depo-
sition. In the argument of the case one of the employed at-
torneys for the Commonwealth said to the jury that the state-
ments in the affidavit were not the evidence of the absent wit-
nesses, but were merely what the defendant had sworn he could

Martin v. Commonwealth.

prove by them. At the conclusion of the argument, and before the case was submitted to the jury, counsel for appellant moved the court to admonish the jury not to consider his statement, but to say to the jury that the affidavit should be received by them as the statement of the witnesses as present and testifying. The court overruled the motion, thereby in effect leaving the impression that the statements in the affidavit were not to be considered by them as evidence.

WILLIAM H. MAY, A. B. STEPHENS, N. B. HAYS, Attorney General, and C. H. MORRIS for Commonwealth.

CITATIONS OF AUTHORITY AND CLASSIFICATION OF QUESTIONS DISCUSSED.

1. Instructions.

2. Statements of counsel as grounds for reversal.

3. Court of Appeals will not reverse in criminal cases on insufficiency of evidence. (Kyle v. Commonwealth, 63 S. W., 782; Ison v. Commonwealth, 66 S. W., 184; Hinkle v. Commonwealth, 66 S. W., 816.)

4. The Court of Appeals will not reverse a criminal case upon the facts. (Connor v. Commonwealth, 81 S. W., 259.)

OPINION BY JUDGE BARKER—Reversing.

The appellant, Tandy Martin, was indicted by the grand jury of Knott county, charged with the offense of willfully murdering John J. Amburgey. A trial resulted in his conviction of voluntary manslaughter and his being sentenced to the penitentiary for a term of 18 years, of which he now complains.

On the evening of the 14th day of November, 1904, a party of men, among whom was John J. Amburgey, came to the store of the appellant. They were all under the influence of liquor—some quite drunk, and others occupying the various lesser degrees of inebriety. Two of them, Enoch Combs and John R. Combs, had formerly lived in Knott county, but had, about 15 years before, moved to Missouri, and at the time of the tragedy herein detailed were on a visit to their former home; and the real object of the gath-

ering of the men on the occasion mentioned seems to
have been to make these visitors have a good time
before they returned to Missouri, which they intended
to do in a few days.   They were all armed with pis-
tols, most of the weapons being "Colt's 45."   While
at appellant's store they continued drinking, and
(as seems to be the custom in the neighborhood
where the homicide took place) as a special amuse-
ment they constantly discharged their pistols into
the air, with the object, apparently, of simply mak-
ing a noise.   One of the men, whose name was Hays,
who seems to have been very drunk, was brandishing
his revolver around in a very reckless fashion, which
angered John J. Amburgey, who struck him across
the head with a "Colt's 45," knocking him to the
ground senseless, apparently killing him.   Hays was
the guest of the appellant, Tandy Martin, who, with
the assistance of some others, carried the wounded
man to his (Martin's) house, washed his wound,
and resuscitated him.   Appellant then returned to
his store, where the party, of whom the deceased was
one, yet remained.   About 10 or 11 o'clock that night
the party broke up and started away.   The appel-
lant and a part of the crowd, among whom was the
deceased, Amburgey, started up the road which led
to the house of appellant, some 50 yards from the
store.   On the way Amburgey and appellant en-
gaged in a quarrel, presumably about the assault on
Hays, each using very profane language toward the
other.   When appellant reached his house, which was
on the roadside, he immediately went in, secured a
Winchester rifle, and returned to a position between
his house and the front gate of his yard.   In the
meantime. Amburgey approached appellant's front
fence from the middle of the road, where he had
been standing, whereupon appellant leveled his rifle

and shot him dead. On the way from the store to the house the party. who were all walking, continued to fire their pistols into the air, and generally to "make night hideous" with their drunken revelry. As this case, from the view we have taken of the question of law to be hereafter discussed, must be reversed, we refrain from unnecessarily detailing the facts, it being, in our opinion, sufficient to say that it was the theory of the Commonwealth that the shooting was done without cause or provocation, and the theory of the defense that the crowd, of which the deceased was a party, constituted a mob, armed and drunk, who were proceeding to attack the appellant's house and do violence to himself or his family, or both, and that he fired the fatal shot in defense of his hearthstone.

When the case was called for trial the Commonwealth announced ready, and the appellant (defendant) moved for a continuance on the ground of the absence of important witnesses and in support thereof filed his affidavit, the substantial part of which is as follows: "John Amburgey, Wesley Breeding, Hansford Austin, Maryland Amburgey, Dock Madden, Enoch Combs and John Riley Combs, began an assault on the defendant, his family and his home by discharging firearms around and into his residence, and to protect himself, his family and his home he shot and killed John Amburgey; that Enoch Combs and John Riley Combs, who are nephews of John Amburgey, and important witnesses for the Commonwealth against the defendant, reside in the State of Missouri, but were present at the time of the homicide in Knott county, Ky., on a visit; that by L. W. Fields, C. J. Madden, G. W. Lawson, Allen Johnson, Ira Lawson, Pearl Madden, W. I. Moore, R. C. Ford, Samuel Wood, J. W. Howard and J. L.

Gordon, all of whom resided in the neighborhood of the witnesses, John Riley and Enoch Combs, he can prove that the reputation of these witnesses for truth and veracity is bad; that the proposed witnesses for the appellant all reside in Missouri, and that the appellant, in order to take their depositions, filed interrogatories and gave notice as by law required, and gave to the clerk of the court the names of W. J. Lawrence, T. J. Slottle and Willson Fields, all qualified to take depositions, and all living near the witnesses whose depositions appellant desired to take; but the clerk, at the instance and suggestion of R. H. Amburgey, a brother of the deceased, refused to issue commission to either of the parties named living near the homes of the witnesses, but did issue it to the clerk of the Taney County Court, who resided 18 miles from the witnesses whose depositions were to be taken; that by reason of the long distance between the officer and the witnesses, he was unable to procure their attendance before him for the purpose of taking their depositions; that but for this wrongful act on the part of the clerk he could and would have procured the depositions of these witnesses to the bad character of the Combses, and that the evidence of those witnesses, when taken, will be true, as appellant believes.''

The attorney for the Commonwealth objected to the continuance of the case, and consented that the affidavit should be read as the deposition of the witnesses, under sec. 189 of the Criminal Code of Practice; and it was so read upon the trial of the case. Upon the argument, the Commonwealth's attorney stated to the jury ''that the statements in this affidavit were not the evidence of the absent witnesses, but were merely what the defendant had sworn he could prove by them.'' At the conclusion of the ar-

gument on both sides counsel for the appellant (defendant) moved the court to admonish the jury not to consider the statement of counsel, and to say to them that they should consider the facts stated in the affidavit as if the absent witnesses had given their depositions in the case. This motion the court overruled, to which the defendant excepted, and thus arises the real question to be considered on this appeal.

So much of sec. 189 of the Criminal Code of Practice as is pertinent to the question in hand is as follows: "That whenever, in any criminal or penal action pending in any of the courts of this Commonwealth, an application shall be made by the defendant for a continuance, based upon affidavits stating the absence of one or more material witnesses, and the facts which such absent witness or witnesses would, if present, prove, the attorney for the Commonwealth shall not be compelled, in order to prevent a continuance, to admit the truth of the matter which it is alleged in the affidavit such absent witness or witnesses would prove, but only that such absent witness or witnesses would, if present, testify as alleged in the affidavit. In which event, the defendant may, on the trial, read such affidavit as the deposition of such absent witness or witnesses, subject, however, to exception for irrelevancy or incompetency; and the attorney for the Commonwealth shall be permitted to controvert the statement of such affidavit so read by other evidence, and to impeach such absent witness or witnesses to the same extent as if he were personally present." * * *

The object of this section is to afford the defendant a reasonable opportunity to produce such evidence as he has in his own behalf in a trial involving his life or his liberty. It is a statute pregnant with

the spirit of fair play and even-handed justice. If the defendant's witnesses are absent without his procurement or negligence, he is permitted to file his affidavit showing the materiality of their evidence and his own diligence in seeking to procure them, and have this affidavit read as their deposition, unless the Commonwealth's attorney chooses to have the case continued for the purpose of producing the witnesses themselves. When the attorney for the Commonwealth thus permits the affidavit to be read as a deposition, it at once ceases to be an ex parte statement, and becomes by the very terms of the statute the deposition of the absent witnesses. To convince the jury that the statements in the affidavit are not the statements of the absent witnesses is to make the statute vain and illusory. Of what value is it to the defendant to say to him, on the one hand, "you may file your affidavit as the evidence you could produce by your absent witnesses," and on the other, to say to the jury, "this is not the evidence of the absent witnesses, but merely the affidavit of the defendant, who is swearing in his own interest." It requires no argument to show that such procedure makes the statute "keep the word of promise to our ear, and break it to our hope." When the court refused to sustain the motion of appellant that he should instruct the jury that the affidavit as to what the absent witnesses would prove, if present, was to be considered as the deposition of the witnesses, he practically placed the seal of his approval upon the Commonwealth attorney's construction of the effect of the affidavit, which entirely nullified the statute, thus depriving the appellant of a valuable defense.

In the case of Darrel v. Commonwealth, 88 S. W., 1060, 28 Ky. Law Rep., 27, a question similar to that under discussion arose, and we, speaking through

Martin  v.  Commonwealth.

Judge O'Rear, said: * * * "When the case was called again for trial, appellant asked for a continuance on account of the absence of his witnesses.  His affidavit gave their names and stated that they all resided in Daviess county, Ky., about 18 miles from the court-house.  The attorney for the Commonwealth con-sented that the affidavit might be read as the depo-sition of the absent witnesses, whereupon the trial was ordered to proceed; the defendant still protest-ing.  One of his absent witnesses, the affidavit stated, would testify that shortly before the date of the al-leged rape he had sexually known the prosecutrix with her consent, and that she was a woman whose reputation for chastity was then bad.  After this affidavit had been read to the jury as the deposition of the absent witness, the Commonwealth was al-lowed to prove, over appellant's objection, that the absent witness was dead and had been for more than a year.  The Constitution, confirming the very spirit of our regard for human liberty, guarantees to every one accused of crime that he shall have compulsory process to procure the attendance of his witness; that this accusation shall not be tried upon one-sided evidence, without his having an equal chance to produce the other.  To facilitate trials, while pre-serving this ancient and valuable guaranty of pro-cess to the accused, it is provided that the court, may, in its discretion, after the first term, allow the de-denfant's affidavit to be used as the deposition of his absent witnesses, where otherwise the presence of the witness could not be promptly had.  When the affidavit is so admitted, its authenticity is beyond ques-tion in that trial.  It must be accepted as if it were the duly signed and certified deposition of the iden-tical witness named.  It was error to have admitted evidence tending to show that the affidavit was false

in its statement that the witness was then living within the jurisdiction of the court and would testify as stated.''

The appellant, in addition to the claim of error we have sustained, urges many others, some of which need not be noticed, because they relate alone to the particular trial had and will not likely occur again. Others, as to the admission of incompetent and the refusal to admit competent testimony, are not well taken. The instruction of the court fully and lucidly state the whole law of the case, and were therefore as favorable to appellant as he was entitled.

Alone for the reason given, the judgment is reversed, for proceedings consistent with this opinion.