## Noe v. Commonwealth.

(Decided January 29, 1929.)

BROCK & WALL and F. M. JONES for appellant.

J. W. CAMMACK, Attorney General, and JAMES M. GILBERT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Reversing.

Jarvis Noe was indicted in the Harlan circuit court for the murder of Alex Davis, and on the trial of the case he was found guilty of manslaughter, and his punishment fixed at ten years' imprisonment. He appeals.

L. T. Blevins operated a garage in Wallins, Harlan county. The second story of the house was cut up into apartments. Blevins occupied one of these apartments, and Jarvis Noe another on the opposite side of the hall. Blevins had bought a new piano. Alex Davis and Loyd Miller, on the evening in question, went to a neighboring town in their car, and got two negroes skilled in playing the piano, and brought them and Mrs. Miller to Blevins' apartment to play the piano. The negroes played and Mrs. Miller danced the Charleston. When this had gone on until nearly 12 o'clock, Blevins came in and asked them to quit, saying that he had a sick child back there. According to the evidence for the commonwealth, they then quit and went downstairs. Miller got in the car, and so did the two negro men. Davis was going to crank the car when Noe, up at the window in the hall, began cursing, and Davis cursed him back. He then went to cursing Miller, and Miller cursed him back. Davis started to crank the car, and Noe called him some curse name, and Davis raised up and started to walk around to go to the back of the car, and the pistol fired. Davis walked a few feet; the pistol fired a second time, and Davis fell.

On the other hand, the proof for the defendant is in substance this: When they left Blevins' room and came out in the hall, they were making a great noise in the hall, which waked up Noe, who was asleep in his room oppo-

site. He got up and opened his door, and, when he did this, they came in his room; there the fuss first started between Davis and Miller. Miller slapped his wife. They got back out into the hall. Blevins came out again, and urged them to go away. Davis struck Blevins' son, and shoved Noe back toward his room, but finally Blevins prevailed on them to go out, and they went out. Noe went down and locked the door behind them. They then commenced throwing rocks against the house, and Noe went to the window and asked them to go on, and they commenced cursing him. Miller was threatening to burst the door down. Davis threw a rock in at the window, which nearly hit Noe; Davis started up over the car, and then threw the rock, and, when he started in at the window, Noe shot him. At the time Noe shot him Davis was trying to get in at the window. When he fired the first shot, Miller ran back and threw a rock at Noe, and it came in the window, and he then shot at Miller. This shot did not hit anybody. The above is in substance the defendant's own testimony, which was sustained by three or four other witnesses introduced by him. The car was sitting about three feet from the house. The window was about eleven feet from the ground. The car was seven feet high. The sign of the garage hung under the window, and was attached to the house by wires. These wires were broken, and the sign was pulled down after the shooting. A muddy track of a man was seen on top of the car the next morning and also a hole made by a pistol ball. The shot which killed Davis did not come out of his body. The evidence for the defendant shows that Miller and Davis went there with half a gallon of whisky, and that they were drinking freely during the evening. It is also undisputed that some time, perhaps about 30 minutes, elapsed after they went down the stairs before the shooting occurred. The conduct of both Miller and Davis, as shown by the weight of the evidence, would indicate that they were both very drunk.

After the defendant had introduced his evidence, the commonwealth was allowed, in rebuttal, to introduce several witnesses who testified that the general moral character of Jarvis Noe was bad. As the defendant had testified, it was proper for the commonwealth, under the Code, to impeach his credibility as a witness by this testimony, but it was only admissible for this purpose, and the court should have so told the jury. Meek v. Commonwealth, 227 Ky. 83, 11 S. W. (2d) 996, and cases

cited. The failure to so instruct the jury was prejudicial to the defendant's substantial rights.

The defendant filed an affidavit for a continuance on account of the absence of two witnesses, Jack King and James King. During the progress of the trial this occurred:

> "The Court: Gentlemen of the jury: Attorney for the defendant will now read the affidavit of Jack King and James King which you will consider the same as their evidence, the same as if they were here and sworn and testified in person."

Then followed the reading of the defendant's affidavit for a continuance. In rebuttal, the commonwealth was allowed to introduce W. H. Davis, who said he had been jailer of Knox county and was acquainted with the people who lived in that county, and, in substance, that there was no man by the name of Jack King in the county. This was incompetent evidence, for the necessary effect of it was that the defendant could not prove by Jack King the facts he had stated Jack King would swear to. Having before it this precise question in Meadows v. Commonwealth, 104 S. W. 954, 31 Ky. Law Rep. 1159, the court said:

> "At the trial of the case, one of the commonwealth's witnesses was permitted to testify as follows: 'I never heard of Lucy Bybee or Tom Bybee before. There is no such person living near here.' As the affidavit was filed with the understanding that it was to be read as the deposition of these two witnesses, the commonwealth was thus able to destroy the effect of the only evidence appellant had, by proving by one of its officers that no such persons lived in that vicinity. This court has declared in a number of cases that the admission of such testimony is reversible error. Darrell v. Commonwealth, 88 S. W. 1060, 28 Ky. Law Rep. 27; Martin v. Commonwealth (121 Ky. 332) 89 S. W. 226, 28 Ky. Law Rep. 295."

The court gave the jury the usual instruction on self-defense, but gave no instruction on the defendant's right to defend his home. If the defendant's evidence was true, the deceased had not only thrown a rock at him through the window, but had climbed up on the car, torn down the sign, and was trying to force his way in at the

window when he fired the shot. If the deceased was as drunk as shown by the evidence, and had done the other things shown by the evidence, it was a question for the jury whether the defendant had not the right under the circumstances to defend his habitation, for a man's home is his castle. The court may not assume that the testimony for the defendant is untrue, but should instruct the jury on the law of the case if the facts are as shown by him, as well as on the law of the case if the facts are as shown by the state. In 30 C. J. p. 83, the rule supported by the great weight of authority is thus stated: "It is a general rule, expressly affirmed by statute in some jurisdictions, that a person is justified in taking life in defense of his habitation where it is actually or apparently necessary to do so in order to repel another person who attempts to enter in a forcible or violent manner for the apparent purpose of committing a felony therein upon either person or property or of inflicting great bodily harm or of assaulting or offering personal violence to a person dwelling or being therein."

To the same effect see Wright v. Commonwealth, 85 Ky. 123, 2 S. W. 904, 8 Ky. Law Rep. 718, Hoover v. Commonwealth, 192 Ky. 490, 233 S. W. 1042, and Carroll v. Commonwealth, 221 Ky. 557, 299 S. W. 183.

In the last case, after discussing the previous opinions, the court said this:

"However, a distinction was pointed out in all of them between the right of an owner to protect his premises from a mere trespass by another, and his right to protect his dwelling from an assault with the intent to forcibly enter it for an unlawful purpose. No one has the right to kill another for merely trespassing upon his premises, but the right to kill to prevent an unlawful forcible entrance into one's dwelling, if it appeared to the owner in the exercise of a reasonable discretion that it was necessary to do so (just as he might kill one in the exercise of his right to defend his person) is universally recognized as a correct principle of law."

Under the evidence, the court, in addition to the instruction on self-defense, should have given the jury the following instruction: "If the jury believe from the evidence that the deceased had climbed up near the window shown in the evidence, and that defendant believed and had reasonable grounds to believe that he proposed to

enter the window forcibly with the intention of forcibly injuring by personal violence the defendant or any member of his family, then the defendant had the right to defend his home and to use such force as he believed and had reasonable grounds to believe was necessary for its protection and if he so shot the deceased, using only such force as above indicated, the jury should find him not guilty."

Judgment reversed, and cause remanded for a new trial.