# Shell v. Commonwealth.

(Decided October 28, 1932.)

C. R. LUKER for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—Reversing.

Orb Shell was indicted in the Laurel circuit court for the murder of Hershel Jones by shooting him with a pistol. On the trial of the case he was found guilty of valuntary manslaughter and his punishment fixed at twenty-one years' imprisonment. He appeals.

As shown by the indictment, the shooting occurred on October 20, 1931. The indictment was returned on October 20, 1931. The case was set for trial at the same term on November 10, 1931. The defendant filed an affidavit for a continuance on account of the absence of his witnesses. The court overruled the motion for a continuance, but allowed the affidavit to be read as the testimony of the witnesses. After the verdict was returned the defendant moved for a new trial on the ground of newly discovered evidence and filed in support of the motion the affidavit of a number of witnesses. The court overruled the motion for a new trial. The defendant insists here that the court erred in overruling the motion for a continuance at the appearance term under the circumstances shown, and that he also erred in overruling his motion for a new trial in view of the newly discovered evidence shown by him on the motion. The case is unusual. As shown by the record without dispute, the defendant is twenty-one years old, poor, and unable of himself to employ counsel. He surrendered to the officers immediately after the shooting and was put in jail. He remained in jail until after the trial. Only about twenty days elapsed between the shooting and the trial. During all this time the defendant was in jail and with little opportunity to prepare for trial. The proof for the commonwealth on the trial was in substance that Jones had no pistol and the defendant was in no danger at his hands when, as Jones approached him, he drew his pistol and shot Jones three times.

On the other hand, the proof, for the defendant, briefly stated, was that the night before he and Jones had a fight, and on the night in question there was a pie supper which they both attended; that Jones was drinking and hunted up Shell two or three times to renew the difficulty; that Shell avoided him and got away; that Jones was armed with a pistol; that Shell got away, but Jones followed him up with a pistol in his hand and shot at him; that the defendant then drew his pistol and fired at Jones about the same time that

Jones fired a second time at him. The defendant had at the trial only one witness who saw the difficulty. In his affidavit for a continuance there was another witness who saw it. On the other hand, the commonwealth had at the trial four witnesses who testified to facts showing or tending to show that Jones had no pistol and did not shoot at Shell. The commonwealth also introduced proof that the witness Sid Parsley, whose testimony was read from the affidavit for a continuance, was elsewhere and not at the place stated in the affidavit, and did not see the difficulty. The commonwealth also proved by twenty-five witnesses that they heard only three shots, while the defendant proved by three or four witnesses that there was at first a shot and this was followed by three loud shots.

On the motion for a new trial the defendant filed the affidavit of eight witnesses showing clearly that Jones did have a pistol and that he fired the first shot. The commonwealth proved by the officer who first got to Jones that he found no pistol on his person or about him. But Jones' cousin Taylor was there when Jones fell and before the officer got there. He testifies to the same facts; but on the motion for a new trial the defendant produced the testimony of witnesses to the effect that Taylor, after the trial, said that he had picked up Jones' pistol and taken it away with him. The testimony of these witnesses, as stated in the affidavits, is clear and strong, showing that Jones not only had the pistol but that he approached Shell at this time for hostile purposes and actually fired the pistol; and the court concludes that in view of the fact that Shell was confined in jail with no opportunity to learn what witnesses would say and the fact that the difficulty occurred at night and the other circumstances, a new trial should be granted that the real truth of this transaction may be better brought before the jury. Colson v. Com., 200 Ky. 402, 255 S. W. 60; 16 C. J. p. 1208.

The court did not err in allowing the commonwealth to contradict the absent witness Sid Parsley, whose testimony was read from the affidavit for a continuance. Section 189 of the Criminal Code of Practice, after providing that the defendant may read the affidavit as the deposition of the absent witness, provides as follows:

"And the attorney for the Commonwealth shall be permitted to controvert the statement of such affidavit so read by other evidence, and to impeach such absent witness or witnesses to the same extent as if he were personally present."

If said Parsley had been present at the trial and had testified precisely as stated in the affidavit, clearly the testimony offered by the commonwealth to impeach his testimony would have been competent, and by the express provision of the Code the absent witness may be contradicted to the same extent as if he were personally present. The Code as now written was not in force before the act of 1920, and the rule in force before the passage of that act no longer controls. In Jarrell v. Com., 240 Ky. 845, 43 S. W. (2d) 177, and Murphy v. Com., 241 Ky., 846, 45 S. W. (2d) 459, it was held that the state cannot show in rebuttal that the witness had made out of court statements in conflict with his testimony as given in the affidavit; but this is for the reason that before a witness can be so contradicted he must be asked if he made these statements and that had not been done. See Civil Code of Practice, sec. 598. In Noe v. Com., 227 Ky. 578, 13 S. W. (2d) 763, and cases there cited, it was held that the state may not show in rebuttal that there is no such person as that named in the affidavit for continuance; but that would be simply to show that the affidavit was false not to contradict or impeach the absent witness.

After the defendant had testified and when he had not put his general character in issue, the commonwealth introduced two witnesses who testified that his general moral character was bad. He objected to the evidence. The court overruled his objection and he excepted. The court did not charge the jury as to the purpose for which they might consider the evidence. In Meek v. Com., 227 Ky. 87, 11 S. W. (2d) 996, 997, the well-settled rule on the subject is thus stated: "Where proof is admitted that the general reputation of the defendant for untruthfulness or immorality is bad, the court should, in every instance, instruct the jury that such evidence is only to be considered by them in determining the credibility of the defendant as a witness, and not for any other purpose in the case. Newman v. Com., 88 S. W. 1089, 28 Ky. Law Rep. 81; Ge-Burk v. Com., 153 Ky. 264, 155 S. W. 381; Roop v.

Com., 201 Ky., 828, 258 S. W. 667. If such an admonition is not given, the evidence may be very prejudicial to the defendant in a case like this."

Nannie V. Jones testified in rebuttal to the effect that she searched Hershel Jones and that he had no pistol just before the shooting, and then said, "The idea of you carrying cartridges and no gun." In Stephens on Evidence, art. 8, the rule is thus stated: "Whenever any act may be proved, statements accompanying and explaining that act made by or to the person doing it may be proved if they are necessary to understand it." To same effect, see 10 R. C. L. secs. 157-160, pp. 974-978.

The statement of the witness was not necessary to understand what she had done. Ordinarily a statement by a bystander is incompetent. Louisville R. Co. v. Johnson, 131 Ky. 277, 115 S. W. 207, 20 L. R. A. (N. S.) 133. Her statement was only her conclusion and her opinion is incompetent. The real effect of the evidence was to get before the jury her opinion and a tacit admission by Jones of her conclusion. But what Jones said or did not say was not competent against Shell, as he was not present, and on another trial what she said as the result of her search will be omitted. The court should have allowed Maxine Beets, who was called in sur-rebuttal, to testify that she was present at the time and that Nannie V. Jones made no search. The court finds no error in the instructions to the jury and no substantial error in the admission of evidence, except as above stated. The indictment is in the usual form and the demurrer was properly overruled. Complaint was made that the court allowed the witnesses for the commonwealth, in rebuttal, to give evidence in chief. The evidence in rebuttal should be confined to contradicting the witnesses for the defendant, and the witnesses who have been introduced in chief should not in rebuttal ordinarily go further or repeat what they have stated in chief. On another trial the court will so confine the testimony in rebuttal.

Judgment reversed, and cause remanded for a new trial.