CASE 87—CONTESTED WILL—OCTOBER 18.

## ·Randolph, &c., v. Lampkin, &c.

APPEAL FROM WOODFORD CIRCUIT COURT.

1. WILL VALID IN PART ONLY.—While a will may be valid as to one devisee, and on account of undue influence invalid as to another, one portion of a will can not be rejected for want of testamentary ca-pacity while another part, written at the same time and no more plainly expressed, is admitted to probate. .

.2. PART OF HEIRS PERMITTED TO CONTEST WILL FOR ALL.—One or more of a great number of heirs may, by order of court, be permitted to contest the probate of a will where it is impracticable to bring ·them all before the court. But even if such an order was not author-ized in this case, it was not prejudicial to the propounders.

:3. UNDUE INFLUENCE—EVIDENCE.—In a contest of a will upon the ground of undue influence and want of testamentary capacity, evi-dence of the testator's conduct or conversation tending to show his feelings toward those who are the natural objects of his bounty, or his previous intention in respect to the disposition of his estate, is competent. But evidence introduced on the trial of this case for the purpose of showing that the testator admitted that he had encouraged his nephew to drink liquor, and was, therefore, responsible for his subsequent dissipated habits, was improperly admitted, as the infer-

ence was attempted to be drawn that the testator owed a recompense to the children of his nephew, who were the contestants, to be discharged only by devising his estate to them.

4. EVIDENCE.—As the ownership of the property left by the testator was not in issue, his title to it being conceded, any evidence on the subject was calculated to divert the minds of the jury from the true issue. It was, therefore, improper to allow the contestants to show in whose name the property had been listed for taxation.

5. SAME.—The record of litigation between the testator and his nephew, the father of the contestants, was competent, if at all, only for the purpose of showing the feelings that existed between them.

6. IMPROPER ADDRESS BY COURT TO JURY.—As the jury were told by the court, after they had announced that it was impossible for them to agree, that the case had become "an incubus upon the business of the court," that they "must decide it," and that "it is no credit to a man merely because he has an opinion to stubbornly stick to it," the verdict should be set aside, it being evident, from the length, tone and manner of the address by the court, that the jury brought in a verdict which they would not have returned but for the interposition of the court

ED. M. WALLACE FOR APPELLANTS.

1. The court erred in permitting a part of the heirs to prosecute the appeal for all. As the heirs were only sixteen in number, they were not so numerous that it was impracticable to bring them all before the court. (Hendrix, &c., v. Money, &c., 1 Bush, 307; Kirk v. Young, 2 Abb., 453; Civil Code of Practice, sec. 25.)

2. It was error to admit testimony tending to show that the testator was not the owner of the property which he attempted to devise, as that question was not in issue.

3. The declaration of the testator that he was responsible for his nephew being a drunkard was incompetent evidence.

4. It was not competent for the contestants to prove that the testator had declared more than twenty years before he made his will that he intended to give his property to his nephew, who was dead when the will was made.

5. The opinion of a witness that a certain person exercised an undue influence over the testator is not competent, unless the facts upon which that opinion is based are stated by the witness.

6. The assessor's books were not competent evidence, because they explained no issue in the cause; nor were they properly proved. (Sutton, &c., v. Floyd, 7 B. M., 3.)

7. It was error to admit as evidence the record of the litigation between the testator and his nephew.

8. The charge made by the court to the jury after they announced that

Randolph, &c., v. Lampkin, &c.

they could not agree was improper, and is ground for reversal. (Howard, &c., v. Coke, &c., 7 B. M., 659; Farnham v. Farnham, 73 Ill., 497.)

9. Undue influence defined : 2 Greenleaf, 688; Lucas, &c., v. Cannon, &c., 13 Bush, 653.

10. As there was no testimony to sustain the verdict of the jury, the lower court erred in overruling the motion of the propounders for a judgment sustaining the whole will, notwithstanding the verdict. (Broaddus' Devisees v. Broaddus' Heirs, 10 Bush, 303.)

C. J. BRONSTON on same side.

Brief not in record.

H. C. McDOUGAL for appellees.

1. Undue influence defined : Boyd v. Boyd, 66 Pa. St., 293; 1 Red. on Wills, 4th ed., 528; Hall v. Hall, L. R., 1 P. & M., 481; Darley v. Darley, 3 Brad., p 508; Boyse v. Rossborough, 6 H. & L., p. 51; Davis v. Calvert, 5 Gill & John.,'Md., 302; Williams' Ex., 6 Am. Ed., p. 57; 3 Moore P. C. C., 290; Forman v. Smith, 7 Lans., 443; Reynolds v. Root, 62 Barb., 250; St. Leger's Appeal, 34 Conn., 434; Brubein v. Cicotte, 12 Mich., 460; Davis v. Calvin, 5 Gill & John., 300; Kinne v. Johnson, 60 Barb., 69; Reynolds v. Root, 62 Barb., 250.

2. Where relations exist by means of which the one is able to exercise dominion over the other, the courts will annul any transaction between them under which the person with such power of control takes a benefit, unless he can show that the transaction is a righteous one. (2 Pom. Eq., 951, and notes; Cadwalader v. West, 48 Mo., 483; Long v. Mulford, 17 O. S., 484; Woods v. Downs, 18 Ves., 119.)

3. Where a will is unreasonable in its provisions, and inconsistent with the duties of the testator with reference to his property and family, this will of itself impose upon those claiming under the instrument the necessity of giving some explanation of the unnatural character of the will. (Redfield on Wills, vol. 1, pp. 510–514; Lynch v. Clements, 24 N. J. Eq., 431; Lead. Cas. in Eq., vol. 2, pt. 2, pp. 1275–6; Hanel v. Hanel, 1 Duv., 203; Bates v. Bates, 27 Ia., p. 116; Higgins v. Carter, 28 Md., 115; Reynolds v. Root, 62 Barb., 250; Gay v. Gillilan, 92 Mo., 250, 263–4.)

O'NEAL, JACKSON & PHELPS, D. L. THORNTON, SAMUEL B. KIRBY on same side.

Brief not in record.

JUDGE LEWIS delivered the opinion of the court.

Lewis W. Lampkin, Sr., died March 27, 1882, about eighty-six years old, leaving a paper purporting to be

his last will, by which was devised to Catherine M. Gordon and her children all his real and personal estate, except thirty acres of land given to Lewis Washington, and one and one-half acres to Jefferson Blackwell; and this is an appeal by the first mentioned devisees and propounders from a judgment rendered in pursuance of verdict of the jury finding, in substance, the paper in question to be his last will, so far as it makes provision for Lewis Washington and Jefferson Blackwell, and not his last will so far as it makes provision for Catherine M. Gordon and her children.

As, under section 35, chapter 113, General Statutes, the proper issue for the jury in a will contest is "whether or how much of any testamentary paper produced is or is not the last will of a testator," it was competent for the jury to find the verdict rendered; and although the devisees, Washington and Blackwell, as well as the contestants, are before this court as appellees, still, as there was not in the lower court, nor, by reason of the relative attitude they occupy, can be any real contest between them and appellants, the judgment must, in the absence of a cross-appeal, be treated as to them final and conclusive.

In order to determine the questions made in behalf of appellants, it is necessary to refer, in some measure, to the family history of the testator, and the manner in which he became owner of the estate devised.

It appears that about the year 1811 James Lampkin died, leaving a will by which he devised his estate to his children, eleven in number, his land being di-

vided and given to his sons. Two of the sons, Presley T. and Lewis W. Lampkin, whose will is in contest, became partners, and jointly occupied and used the land devised by their father, and other tracts purchased, until 1834, when the former died, leaving three children.

By his will the control and management of his estate and custody of his children were given to Lewis W. Lampkin, who was made executor. Two of the children, however, died in infancy, leaving Lewis W. Lampkin, Jr., sole devisee, who resided with his uncle until and for some time after his marriage; but in the year 1851 he separated from his wife, and made a voluntary conveyance of his estate to his uncle for the purpose, it seems, of defeating his wife's claim to alimony, from whom he was divorced. About 1858, having again married, he instituted suit against his uncle to recover back the estate he had conveyed, which was settled by payment of a large sum to him. He afterwards brought another action to recover more on that account, which was compromised by the payment of another large sum to him; and soon after he went away, and so far as this record shows, was never thereafter seen or heard from by his uncle, the testator.

Lewis W. Lampkin, Jr., had by his first, one and by his second wife two children, on whose motion appeal in this case from the county to the circuit court was taken; and one of the reasons for reversal now urged is an order permitting them to contest the probate of the will for the other heirs-at-law of the testator. It seems to us section 25 of the Civil Code

is peculiarly applicable in a case like this, for while the testator is shown by the record to have had ten brothers and sisters, the number and names of their children do not appear; and, consequently, here is clearly a case contemplated by that section, where the parties are numerous, and it is impracticable to bring them all before the court. Besides, we do not perceive how appellants were prejudiced by that order,. but they were rather benefited in thus saving expense of multiplicity of suits.

Any evidence of his conduct or conversation tending to show the feelings of a testator towards those who are the natural objects of his bounty, or his previous intention in respect to disposition of his estate, is competent; but the evidence introduced on trial of this case for the purpose of showing that the. testator admitted he had encouraged Lewis W. Lampkin to drink liquor, and was, therefore, responsible for his subsequent dissipated and drunken habits, was improperly admitted; for while his purpose was not to injure, but, as he said, to prevent him dying of consumption, as his brother and sister had done, still the inference was attempted to be drawn, and to operate improperly on the minds of the jury, that he owed a recompense to the children of Lewis W. Lampkin, to be discharged only by devising his estate to them. It was also improper, as was done, to show in whose name the land was listed for taxation previous to the death of Presley T. Lampkin; for, even if the mode adopted to show the fact had been a proper one, the ownership of the property left by the testator was not in issue, but his title to it was clear and con-

ceded, and evidence on that subject was necessarily misleading, and calculated to divert the minds of the jury from the true issue. The record of litigation between the testator and Lewis W. Lampkin was competent, if at all, only for the purpose of showing the feelings that existed between them.

The testator never had any children, though twice married. Precisely when he first married does not appear. His last wife, who was a sister of Catherine M. Gordon, died under very distressing circumstances about five years before he did, having been burned to death, and he thereafter resided upon his farm with no other companions but negroes, his former slaves, until about six months before, when a son of Catherine M. Gordon leased his land for five years. A brother of his last wife, named Hugh Smith, seemed, according to the evidence, to have at one time had influence over him, and a will was made by which the testator gave to him all his estate; but Smith seems to have betrayed his confidence, and left the State about a year before the last will was made. It is not affirmatively shown that Mrs. Gordon, or any of her children, had or exercised influence upon the testator to cause him to make the will now in contest, nor that it was so made under any other influence or incentive than his own feelings and wishes; but as there were facts proved from which the jury might reasonably have inferred undue influence was used for the purpose, and did cause execution of the will, we do not feel authorized to disturb the verdict upon the ground it is palpably or flagrantly against the evidence.

It appears from the bill of exceptions that after the jury had retired, and for some time considered of their verdict, the foreman came to the judge of the court, and had a private conversation with him, and some time after his return to the jury room the jury came in a body into the court room, and reported they were unable to agree, and there was no possibility of their agreeing, and thereupon the judge arose from his seat, and said to them: "Gentlemen, *how do you expect this case to be decided unless you do it? This is, as you know, the third trial of this case, and it has become an incubus upon the business of the court.* You were examined in your selection as members of this jury, and none of you disclosed any thing to cause me to doubt your capacity to try the case and decide it. *You must decide it.* You have given the case a close and patient hearing. You must be patient and considerate of one another in your deliberations, and give the case full consideration. You were hearing the case three or four days, and you must take more time in your deliberation. You say you can't agree. *It is no credit to a man merely because he has an opinion to stubbornly stick to it;* but he should be open to argument and reason and conviction. You ought to go into the jury room with a spirit of conciliation and disposition to agree. You, gentlemen, should kindly, and in good temper, listen to each other, and charitably listen to those with whom you don't agree. The judge has to decide cases often when he is doubtful as to the right. Even in our families, by listening to our wives and members of our family, we change opinion. I trust you

will retire, and give to each other a patient consideration, and reach a conclusion in this case. Gentlemen, you will retire to your room for further consideration.''

It does not appear, nor is it contended, the judge of the court intentionally abused the discretion which he had and might reasonably exercise as to length of time the jury ought to have been kept together with a view to agreement upon a verdict; but it seems to us when the fact the jury had come into court, and announced it impossible for them to agree, and the length, tone and manner of the address by the court are considered, the conclusion is almost inevitable that the jury brought in a verdict which they would not have rendered but for the interposition of the court; and as the actual finding shows evidence of a compromise of opinion, and yielding by some of the jury of their previously announced unalterable conviction, we think the verdict can not be regarded as the result of deliberate judgment, but was brought about by the supposed paramount duty of the jury to agree upon a verdict rather than by free and unbiased conviction of what their verdict ought to be; and whenever the interference of the court appears to have had such effect upon the jury, their verdict ought to be set aside.

Wherefore, for the errors indicated, the judgment is reversed, and cause remanded for a new trial, and further proceedings consistent with this opinion.