## Canterberry v. Commonwealth.

(Decided January 10, 1928.)

### Appeal from Carter Circuit Court.

1. Homicide.—In prosecution for murder, permitting commonwealth, over defendant's objection, to introduce transcript of all evidence given at coroner's inquest, after proper use to contradict evidence given by certain witnesses at trial in direct conflict therewith, held erroneous.

2. Criminal Law.—Although circuit judge has, under Criminal Code of Practice, sec. 251, reasonable discretion as to time jury may be held together for purpose of arriving at a verdict, and may properly admonish them as to their duty and importance of reaching amicable conclusion, he is not authorized to do this arbitrarily or to do or say anything to coerce their action.

3. Criminal Law.—Threat by trial judge, at time jury reported that they could not agree, to prolong their confinement for a period of ten days, held erroneous as calculated to coerce and control a weak and timorous juror.

JOHN M. THEOBOLD and WAUGH & HOWERTON for appellant.

FRANK E. DAUGHERTY, Attorney General, and G. D. LITSEY, Assistant Attorney General, for appellee.

Opinion of the Court by Judge McCandless—Reversing.

John Canterberry was tried in the Carter circuit court on a charge of murder, found guilty of manslaughter, and sentenced to the penitentiary for 21 years. On this appeal it is insisted that the verdict is flagrantly against the evidence, and that the court erred in the introduction of evidence and in an admonition to the trial jury.

The facts are these: On Monday morning the 21st of June, 1926, the appellant shot and killed his son Jesse Canterbury. At the time appellant was driving a small motor truck, and the deceased was standing on the right-hand running board, holding to the top of the cab. The appellant was 54 years of age, and had formerly lived on a farm, but about two years before the homicide had moved to the town of Grayson, where he conducted a soft drink establishment in his residence. Aside from his wife, his family consisted of two daughters and two sons, all of whom were grown; Jesse, the deceased, being 23 years of age, and a large, stalwart man. Appellant claims that Jesse had always been insubordinate, and that, after he grew to manhood, had threatened his life repeatedly, and on several occasions sought to take his life; that his wife was jealous of him, and was continually raising groundless quarrels in which Jesse would participate, taking up for his mother; that on the day before the homicide one Ruby Fraley, a girl of the town, came to his place of business, and one of his daughters invited her into another room to play the organ; that he and both his daughters accompanied her; that later his wife came in and ran the girl away, and became so quarrelsome that he left and spent the night at a shack on his farm. The following morning he drove home in a Ford truck to remove his things to the farm, contemplating a permanent separation. He removed one load early in the morning and about noon returned for a second load. At this time Jesse appeared, and objected to him removing the ice chest and stock of soft drinks. A quarrel ensued, and Jesse struck him in the breast, and the two threw pop bottles at each other. Jesse procured a pistol, but the older daughter jerked this from his hand, and in turn the other son, George, snatched it from her, and ran and hid it. Jesse went out of the room, saying that he had an-

other pistol, and would get it and shoot him if he attempted to remove the articles in question. While Jesse was gone, the older daughter assisted him in placing the ice chest on the truck, and he started away. Jesse came running out of the house, and tried to get on the rear of the truck. Failing in this, he ran around to the side, and sprang upon the running board. He was holding to the cab with one hand, and presented a pistol with the other. There was a road turning into a park a short distance from the house, and Jesse told him to drive into this road and turn the truck around and go back or he would kill him. He did not do this, and Jesse presented his pistol, whereupon he drew his pistol and fired three times, Jesse falling from the running board. He drove on a short distance, and stopped the truck. In looking at the seat he discovered that Jesse's pistol had fallen on the seat, and he picked this up and placed it in his pocket with his other pistol, and started to Ashland, but, on thinking the matter over, decided to return and came back to a point in the highway where he was arrested by the officers, who found two pistols and a number of cartridges upon his person.

His evidence is fully corroborated by his three children as to what occurred at the house on Sunday and at the time of the shooting. Also these three children and an older son corroborate his statement as to Jesse's previous conduct; and threats to take his life are also proven by them and other witnesses. On the other hand, a half dozen or more commonwealth witnesses living in nearby residences, who saw different parts of the proceedings at the time of the shooting, saw no pistol in Jesse's hand or any demonstration on his part; the substance of their evidence being that Jesse was standing on the running board bareheaded with his hands holding to the side of the cab; that plaintiff fired three times, and Jesse fell, and plaintiff speeded up and left the place. Jesse had no weapon on his person, and they saw none around his body. Jesse lived only 10 or 15 minutes, and made no statement.

A coroner's inquest was held at appellant's residence on Sunday afternoon, at which time a number of witnesses testified, including appellant's younger son and two daughters; the evidence being taken down by a stenographer. The evidence of these three witnesses as given

on that occasion was in direct conflict with that given on this trial. On cross-examination they were asked as to this, and properly contradicted by the stenographer; the court admonishing the jury as to the effect of the contradictions. However, the court did not stop with this, but, over the objection and exception of the appellant, permitted the commonwealth to introduce the transcript of all the evidence given at the coroner's inquest. This was a manifest error. The commonwealth, upon laying a proper foundation, was authorized to contradict the witnesses by proof of conflicting statements at the coroner's inquest, and this could be done either by the stenographer or by other witnesses. But there is no rule of law that authorized the stenographer's transcript of the evidence at the inquest to be introduced, especially as it contained the evidence, not only of the witnesses to be contradicted, but also the evidence of all other witnesses at that proceeding, and, in so far as it included the evidence of witnesses not in contradiction, it must have been prejudicial.

It further appears from the bill of exceptions that the case was submitted to the jury on the 23d day of November, and on the following morning at about 11 o'clock the jury reported to the court that they could not agree or make a verdict, and that the court said to them in substance, "that he would keep the jury together until Saturday, December 4th," to which the appellant objected and excepted; that thereupon the jury returned to the jury room, and at 1:10 p. m. on the same day reported their verdict, finding defendant guilty. While the Code (Cr. Code Prac., sec. 251) gives to the circuit judge a reasonable discretion as to the time the jury may be held together for the purpose of arriving at a verdict, and the court may properly admonish them as to their duty and the importance of reaching an amicable conclusion, he is not authorized to do this arbitrarily, or to do or to say anything to coerce their action. Sandefur v. Com., 143 Ky. 655, 137 S. W. 504; Randolph v. Lampkin, 90 Ky. 551, 14 S. W. 538, 10 L. R. A. 87; Chaplin v. Com., 142 Ky. 782, 135 S. W. 298; People v. Sheldon, 156 N. Y. 268, 50 N. E. 840, 41 L. R. A. 644, 66 Am. St. Rep. 564. In capital cases the jurors are placed under guard and in a sense kept in confinement, and a threat by the trial judge to prolong such confinement for a period of ten days is calculated to coerce and control a weak and timorous

juror. Clearly this was erroneous, and highly prejudicial to the defendant's substantial rights.

Wherefore the judgment is reversed, and cause remanded for proceedings consistent with this opinion.