## Barnett v. Commonwealth.

(Decided September 28, 1928.)

### Appeal from Magoffin Circuit Court.

Criminal Law.—In prosecution under indictment for murder, where defendant was allowed affidavit stating what absent witness would testify to be read as a deposition, after his motion for continuance because of witness' absence was overruled, remarks of prosecuting attorney that "here is the evidence of C., a mere affidavit," held prejudicial to defendant, in view of Constitution, sec. 11, and Criminal Code of Practice, secs. 188, 189.

H. H. RAMEY for appellant.

J. W. CAMMACK, Attorney General, and GEO. H. MITCHELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Reversing.

Cleave Barnett and Sherman Barnett were indicted for the murder of Dave Fletcher. Upon his separate trial, Cleave Barnett was found guilty of manslaughter, and his punishment fixed at confinement in the penitentiary for five years. His motion for a new trial was overruled, he excepted, and has appealed.

These parties were neighbors, and formerly Mrs. Fletcher was Mrs. Cleave Barnett. They were divorced, and after their divorce each remarried, and thus the former Louisa Barnett became Louisa Fletcher. Previous to their divorce, a little girl had been born to them, and after their divorce, this little girl lived with her father, Cleave Barnett, and had so lived for four or five years prior to the homicide. On the day of the homicide, Mrs. Fletcher, formerly Mrs. Barnett, persuaded the child to

come to the Fletcher home. When Cleave Barnett returned, and learned of the absence of his child, he went to Fletchers to get her. They refused to give her up. There is some dispute about what occurred at the Fletcher home, but evidently it was a stormy meeting. There is evidence that Fletcher went into the house hurriedly and then came out with his hand under the bib of his overalls, also that Mrs. Fletcher drew an ax on Cleave Barnett and declared her intention to split him open. Barnett declared his intention to institute legal proceedings to recover the custody of his child, and left. On the evening of that day, just after dark, Cleave Barnett started up the road near his house to see that the bars which closed the gate leading into an inclosure wherein he had his cows were securely fastened. As he went up that road, he met Dave Fletcher, Jim Marshall, Grover Cole, Newt Cole, and Millard Watkins. There is little dispute about what occurred, except that those who were with Fletcher testified that, when they met, Barnett said to Fletcher, "Dave, are you as keen to fight now as you were this evening?" and almost immediately Dave Fletcher shot Cleave Barnett through the chest. Barnett's evidence is that nothing was said, and that the first thing that was done was Fletcher shot him. This wound was inflicted by a .32 caliber revolver. Barnett rushed on Fletcher and grabbed this revolver. While the two men were struggling for its possession, it was again discharged, but struck no one. Thereupon Barnett, holding to his revolver with his left hand, thrust his right hand into his pocket, drew his pocket knife, opened it with his teeth, and proceeded to cut Fletcher's throat, an operation in which he was so successful that he almost cut Fletcher's head off. Indeed, he succeeded in unjointing Fletcher's neck, and all that kept his head attached to his body was a strip of skin and flesh about two inches wide at the back. In his wounded condition and while he was struggling with Fletcher, he halloaed for his son to help him. His son rushed out with a shotgun. While the two men were struggling, and distinguishing his father from Fletcher by the fact that he had on a light shirt while his adversary had on a sweater, Sherman Barnett shot Fletcher with a shotgun. Fletcher fell and immediately died. Cleave Barnett also fell, and was carried into his house by members of the family. Fletcher's companions had run as soon as the difficulty started, and Sherman Barnett shot at them a few times with the shot-

gun, as they ran, and, though he hit some of them, he inflicted no serious wounds.

Barnett is complaining of the instructions given, but we find no merit in that contention.

He complains of alleged errors in the admission and rejection of evidence, but, as these errors will probably not occur on the next trial, we need not pass on this question now, and we will not do so.

He also insists the verdict is flagrantly against the evidence, another question which we do not pass on in view of the fact that there is to be another trial.

It was the contention of the commonwealth that Fletcher and his companions had started to church when they met Barnett, and he brought on this difficulty by asking Fletcher if he was keen to fight, whereas it was the contention of Barnett that these men had started down there to do him harm, and, when they met him, Fletcher immediately, and without notice or provocation, began shooting. To sustain his contention, Barnett had sought to secure the evidence of Farish Cole, but was unable to have a subpoena executed upon Cole, who had gone to Indiana, after the examining trial. Barnett supported his application for a continuance by affidavit showing his diligent efforts to obtain the attendance of Cole as a witness, and that if Cole were present in court, he would truly testify that on the afternoon before Dave Fletcher was killed he was at the home of Dave Fletcher and heard Dave Fletcher, Jim Marshall, and Millard Watkins in a conversation, and heard the said Dave Fletcher say that as soon as it got dark he and Watkins and Marshall were going down to the home of the defendant, Cleveland Barnett, and settle with him, that, if they did not kill him before morning, Barnett would come to Salyersville and get a warrant for them for taking his little girl off, and that he intended to "shoot his damned heart out." Barnett's motion for a continuance was overruled, and he was permitted to read the above statements in his affidavit as the deposition of the absent witness.

The bill of exceptions shows that, in his argument to the jury, the attorney for the commonwealth, over the objection of the defendant, was permitted to say to the jury: "Here is the evidence of Farish Cole, a mere affidavit." This is the remaining ground relied on by Barnett to secure a reversal. This misconduct of the commonwealth's attorney was prejudicial to his substantial

rights. By section 11 of our Constitution the accused is given "the right to have compulsory process for obtaining witnesses in his favor." This is a salutary provision. By section 188 of the Criminal Code, it is provided that a trial may be postponed for sufficient cause. By section 189 of that Code, the provisions of the Civil Code of Practice are made applicable to the postponement of prosecutions; but as that section was originally written it provided that the continuance should be granted unless the commonwealth should admit that the facts are true, and, in the case of Pace v. Com., 89 Ky. 206, 12 S. W. 271, 11 Ky. Law Rep. 407, this court expressly upheld the constitutionality of that act. Section 189 was amended by adding thereto subsections 1 and 2, and in the case of Adkins v. Com., 98 Ky. 539, 33 S. W. 948, 32 L. R. A. 108, that was held to be constitutional. Since that was done, subsection 2 has been repealed. Attached to the case of Madison v. State, as reported in Ann. Cas. 1913C, 484, there is an extensive note, and on pages 491, 492, etc., a number of cases are cited from other jurisdictions holding similar practice acts unconstitutional. We are calling attention to this to show the importance of following strictly the Code provisions, and the grievousness of the misconduct of the commonwealth's attorney in departing therefrom. Able discussions of this will be found in 6 R. C. L. 568, and in 16 C. J. 900. In the latter work it is stated:

"When the court allows an affidavit stating what the absent witness would testify to to be read as a deposition, it is improper for the prosecuting attorney to make a statement discrediting the affidavit as evidence."

This court itself has said a great deal on this subject, for example:

"In the argument to the jury, the attorney for the commonwealth said: 'The testimony of the witness Wm. Purcell is only what the defendant swore in an affidavit for a continuance;' . . . this statement by the prosecuting attorney was prejudicial to appellant. This affidavit was admitted as the statement of the witness Purcell, and the jury should not have been told it was but the affidavit of appellant, made for continuance." Redmond v. Com., 51 S. W. 565, 21 Ky. Law Rep. 331.

To the same effect is Gilbert v. Com., 106 Ky. 919, 51 S. W. 804, 21 Ky. Law Rep. 544.

"In his argument to the jury, the attorney for the commonwealth, in speaking of the affidavit for continuance, which was read to the jury as the evidence of the absent witnesses, called it the 'defendant's affidavit.' . . . There should have been no allusion to them as the defendant's statement of the testimony, or imputation that they were not precisely the correct and genuine statements of the witnesses." Johnson v. Com., 61 S. W. 1005, 22 Ky. Law Rep. 1885.

"There should have been no allusion to statements contained in the affidavit as to the testimony of witnesses which was not actually read to the jury; nor should the commonwealth's attorney have been permitted to state to the jury motives which actuated him in consenting that the affidavit of the defendants should be read as the testimony of the absent witnesses." Lindle v. Com., 111 Ky. 866, 64 S. W. 986, 23 Ky. Law Rep. 1307.

"During the argument for the commonwealth, the county attorney, in commenting on the affidavit' which was read as a deposition, . . . said, 'I say the statements in the affidavit that Gaddis had relations with this girl is a lie, and they knew it when they made it.' . . . We think the statements of the county attorney were improper, and prejudicial to the rights of the defendant." Darrell v. Com., 82 S. W. 289, 26 Ky. Law Rep. 541.

"In the concluding argument to the jury, the commonwealth's attorney said . . . that the supposed testimony of these absent witnesses was not in fact their sworn testimony, but was merely an affidavit filed on behalf of the defendant. . . . This was an abuse of privilege by the commonwealth's attorney, and objections of appellant should have been sustained." Shepherd v. Com., 119 Ky. 931, 85 S. W. 191, 27 Ky. Law Rep. 376.

Other cases to the same effect are Martin v. Com., 121 Ky. 332, 89 S. W. 226, 28 Ky. Law Rep. 295; Johnson v. Com., 61 S. W. 1005, 22 Ky. Law Rep. 1885; Carroll v. Com., 92 S. W. 308, 29 Ky. Law Rep. 33; Meredith v. Com., 148 Ky. 106, 146 S. W. 407; Howerton v. Com., 129 Ky. 482, 112 S. W. 606, 33 Ky. Law Rep. 1008.

It follows that the remark of the commonwealth's attorney was prejudicial, and for that this judgment is reversed.