## Canterbury v. Commonwealth.

(Decided February 15, 1929.)

JOHN M. THEOBALD for appellant.

J. W. CAMMACK, Attorney General, and S. B. KIRBY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER STANLEY—Reversing.

Charged with the murder of his own son, the appellant, John W. Canterbury, for the second time has been convicted of manslaughter. From the judgment sentencing him to serve 20 years in the penitentiary, he prosecutes this appeal, assigning numerous grounds for a reversal. However, we need to consider only one of them.

A clear statement of the circumstances of this homicide appears in the former opinion of Canterbury v. Commonwealth, 222 Ky. 510, 1 S. W. (2d) 976, and need not be repeated.

Upon the call of the case for trial the defendant entered a motion for a continuance and in its support filed his affidavit setting forth his reasons, among which was the absence of several material witnesses. All of them appeared, however, except his daughter, Jane Justice, who was sick, and John Horton. In his affidavit the defendant stated that these two witnesses had testified on the former trial, and that a transcript of their evidence was then in court; and "that he will prove by each of said witnesses substantially the facts set out in the official transcript of evidence . . . and which . . . is made a part thereof as fully and completely as if set out herein at length *in so far as the same shows the testimony in chief* of each of said witnesses." The order of court overruling the motion for a continuance recited that the commonwealth agreed to admit the evidence referred to in the affidavit subject to relevancy and competency.

Section 189 of the Criminal Code of Practice provides in part that, whenever an application for a continuance shall be made by the defendant, based upon an affidavit stating the absence of material witnesses and the facts which such witnesses would, if present, prove, the attorney for the commonwealth, in order to prevent the continuance, may admit that such absent witness "would, if present, testify *as alleged in the affidavit,* in which event the defendant may, on the trial, read such affidavit as the deposition of such absent witness or witnesses, subject, however, to exception for irrelevancy or incompetency." The testimony of the absent witnesses alleged in the affidavit filed in this case was their testimony *in chief* on the former trial, and that is what the attorney

for the commonwealth agreed should be read as their depositions on this trial. There was no agreement that the cross-examination of those witnesses might be read also. On the trial, the defendant's counsel read the direct examination of these witnesses, and, over his objections, the court permitted the commonwealth's attorney to read also their cross-examination, to which rulings proper exceptions were saved.

The Attorney General construes the affidavit as including all of the testimony given on the former trial, while the appellant insists that it includes only the direct examination of the witness referred to. The cross-examination of defendant's daughter tended strongly to destroy the effect of her direct examination. Although inartfully expressed, the defendant seemingly intended to incorporate in his affidavit only the direct examination of the witnesses, and that is our interpretation of the instrument.

The instrument being thus construed, three of the Judges of this court, JUDGES CLAY, DIETZMAN, and LOGAN, are of the opinion that, due diligence having been shown by the defendant to obtain the presence of the absent witness, the commonwealth, in order to prevent the continuance sought, was obliged to permit the defendant to read his affidavit embodying only the direct testimony of his daughter, and that it could not read her cross-examination, and that its agreement that only the direct testimony be read added nothing. In their judgment, when the defendant files his affidavit as to what an absent witness will testify, if it be shown that due diligence was used to obtain the presence of that witness, section 189 of the Code makes it mandatory upon the commonwealth either to admit the affidavit as made, subject to relevancy or competency, or suffer a continuance. Judge REES, however, is of the opinion that, as the commonwealth voluntarily agreed to permit only the direct testimony of appellant's daughter to be read, it must be held to its agreement. However, in the absence of such voluntary agreement, he is of the opinion that the commonwealth could not have been forced to admit the reading only of the direct examination, but could have compelled the appellant to introduce the whole deposition of his daughter, if he wished to use any part of it. In this he agrees with the dissenting opinion of Judge THOMAS. However, being of the opinion that the commonwealth could not vio-

late the agreement it had voluntarily made, he joins with Judges CLAY, DIETZMAN and LOGAN in the reversal of this case.

Judgment reversed.

Whole court sitting.

### DISSENTING OPINION BY JUDGE THOMAS.

The reversal of the judgment for the single reason stated in the opinion is, according to my view, such a fundamental departure from the rules of criminal practice and the reasons underlying them, and so ignores the principles of justice and fair dealing between litigants, including a defendant in a criminal prosecution as is demanded and exacted by established rules for the conduct of trials in court, that I feel myself impelled to briefly state the reasons why I dissent therefrom.

The chief, if not the only, reason why the testimony of a witness in the trial of a criminal prosecution given at a former trial may not be introduced at a later one, is found in section 11 of our Constitution, which is a part of that instrument designated as "the Bill of Rights," wherein an accused is vouchsafed the privilege of meeting the witnesses "face to face." But a notable and outstanding exception to that guaranty is the competency of dying declarations, the introduction of which was admissible at common law long before the adoption of our Constitution, and which courts everywhere continue to sustain upon the ground that the witnesses who testify to the dying declaration appear at the trial and there meet the defendant face to face. It required some circumlocution on the part of courts to adopt that reasoning for the purpose of continuing the competency of dying declarations after the adoption of the constitutional guaranty; but is has worked satisfactorily and justly, and has proven to be a most beneficial and salutary rule in the enforcement of the criminal laws. If the constitutional guaranty is met by the reason assigned for the introduction of dying declarations, a fortiori, would it also be met when the former testimony was given by a witness who confronted defendant face to face when it was given, and especially so if the witness was one of his own introduction. In the latter case it was the defendant himself who caused the record to be made of the testimony of the witness as given on the first trial, and, under our

statute relating to court stenographers, that testimony is made a perpetual memorial in the trial court as a part of the record of the prosecution, and from and after the first trial defendant knows exactly what it was from the beginning to the end of it, including, of course, that portion devoted to the cross-examination of the witness.

It was not the examination in chief alone of defendant's daughter that constituted the record of her testimony, but her entire examination constituted it, and, if it should be read on a subsequent trial, it would be done after defendant had received the benefit of the constitutional guaranty by having met her face to face in his first trial. So that, in the respects indicated, it is my conclusion that the constitutional guaranty is more completely met in such circumstances than in the case of dying declarations.

It will be observed that defendant, if the opinion correctly interprets the record, relied in his affidavit upon a public record to which he referred therein, but he chose to ask for a reading upon his trial of only a part of it, and which I conclude contravenes a most fundamental principle of the law of evidence, to the effect that a litigant relying upon any character of record or writing is compelled to have the whole of it submitted, and is not permitted to reject such parts of it as are unfavorable to him. Differently stated, a litigant relying upon a record or writing must take the bitter with the sweet, and cannot deprive his adversary, though the commonwealth, of the benefit of the portions thereof that are detrimental to him. 22 C. J. 814, 815, secs. 928, 929. On this principle I maintain that it was incompetent for defendant in this case, even if the record showed that he unequivocally did so, to carve out by his affidavit only a portion of the former testimony of his absent daughter and to force the commonwealth to permit its introduction, or continue the trial without the privilege by it of reading all of her former testimony or such portions thereof as it saw proper to do, since the portion so read by it was made upon the solemn occasion when the witness met defendant face to face. To allow him to do so would not only violate the fundamental rule, supra, but would encourage trickery on the part of himself and counsel, and to thereby delay and obstruct the administration and enforcement of the criminal law contrary to the fundamental principles of right and justice. For that reason alone I favor adopting the interpretation that would prevent such

practice, if it can be done consistently with fundamental rights of defendant.

A different case is presented where the affidavit for the continuance sets out what the testimony of the absent witness would be on the instant trial without referring to perpetuated former testimony of the same witness, if in existence, and in which case the commonwealth would be compelled to admit that the witness would testify, if present, and it would also be deprived of the right to contradict the alleged testimony of the absent witness by showing contrary statements made by him. In that case no public record would be resorted to for the purpose of obtaining the former testimony of the witness as stated in the affidavit. But in this case, under the express reference in defendant's affidavit, the transcript of the testimony of the absent witness was compelled to be read, but only (as the opinion holds) to the extent that the affidavit called for it, and which, I repeat, the defendant was not entitled to have done, either under the constitutional guaranty or under any other rule known to me.

The fundamental principle entitling a defendant to a continuance because of an absent witness is to enable him to get the benefit of his testimony, either by his corporeal presence at the trial and testifying in person, or, where allowable, to take his deposition. He is not entitled to either of those two methods without extending to the commonwealth the right to cross-examine the witness. So that, in this case, instead of asking for time to take the deposition of the absent witness who was unable to attend, defendant contented himself by referring to the record of her testimony given at a former trial which is in all essential respects her deposition. If it had been in reality a deposition, taken under circumstances allowing it, but the witness at the time of the second trial was within the jurisdiction of the court so that her personal attendance could be required, unless unable to attend, could it then be said that defendant could force the commonwealth to continue the case unless it permitted him to read only such portions of her previously taken deposition as he saw proper? I think not; and I can detect no material distinction between the supposed case and the one presented by this record. It is therefore my conclusion without further elaboration that, in the circumstances in this case, defendant was not entitled to a continuance

upon condition that he be permitted to read only the examination in chief of the absent witness.

But I do not construe the applicable portions of the record as an agreement on the part of the commonwealth to read on the trial *only* the direct examination of the absent witness and not her cross-examination, both of which are contained in the official transcript of the record as heard and made upon the first trial of the prosecution.

On the day the case was set for trial the commonwealth announced ready, and the defendant announced not ready, and filed his affidavit and moved for a continuance. The order then recites: ''And the commonwealth agreeing to admit the evidence referred to in said affidavit, *and the transcript of evidence on a former trial hereof* subject to relevancy and competency, his motion was overruled by the court to which ruling the defendant at the time objected and excepted.'' (My emphasis.) The affidavit filed by defendant and referred to in that order recites that defendant ''will prove by each of said witnesses substantially the facts sets out in the official transcript of the evidence herein heard and made on a former trial of this action and which original transcript is now in court, having been forwarded to the clerk of this court by the clerk of the Court of Appeals in obedience to an order therefor, and which official transcript, now on file in the records of this court is made a part hereof as fully and completely as if set out herein at length in so far as the same shows the testimony in chief of each said witness.''

It will thus be seen that the affidavit stated, in substance, that the absent witness would testify to substantially the same facts as she did on a former trial, and which testimony was then on file in the court as a part of the record of this case; but defendant saw proper to refer to only a portion of that testimony and which was that given by the absent witness in her examination *in chief* at the former trial. He had previously said that the witness would testify the same *as upon the former trial,* which included both her examination in chief and her cross-examination, and when the affidavit, so framed, was filed, the commonwealth, as we have seen, agreed ''to admit the evidence referred to in said affidavit, and the transcript of evidence on a former trial hereof,'' and which I conclude referred to all of the testimony given on the former trial by the absent witness. The language

found in the record embodying the agreement of the commonwealth, nowhere confines the agreement to the admission and introduction of only the examination in chief of the absent witness, but, I repeat, it agreed to admit the evidence "referred to in said affidavit," and to admit "the transcript of evidence on a former trial hereof." The phraseology of the excerpts I have taken from the orders of the court and from defendant's affidavit is much more susceptible to the interpretation herein contained than to the one now contended for by counsel for defendant and which the opinion of the court adopts, i. e., that the commonwealth agreed to admit only the testimony given in chief at the first trial by the absent witness and which conclusion is necessarily reached because of the language in the affidavit expressly referring to the testimony given in chief. The affidavit nowhere stated that the witness would not also testify as she had done on cross-examination at the first trial, and I think that defendant, conceding his right to do so, if he desires only a particular portion of testimony given by a former witness to be read on a subsequent trial, he should see to it that his application as made out by him clearly so indicates. However, I agree with the opinion that it would be incompetent to obtain a continuance or the right to read a particular part of the testimony of a former witness in any such manner or fashion.

But, if it should be conceded that the commonwealth agreed upon the last trial of this case to read only the examination in chief of the absent witness made on a former trial, then I do not agree with the opinion that it was reversible error to also read the cross-examination, notwithstanding the agreement. Prior to the adoption in 1880 of section 340 of our Criminal Code of Practice, as now phrased, this court and others, following the extreme technicalities of the common law which were built upon an undue merciful consideration of defendant's rights in a criminal prosecution, reversed criminal convictions for the most trifling and immaterial reasons. Our Legislature took cognizance of that fact, as did also those of other jurisdictions, and on March 4, in the year mentioned, the section, supra, was amended so as to read: "A judgment of conviction shall be reversed for any error of law (appearing on the record when, upon consideration of the whole case, the court is satisfied that the substantial rights of the defendant have been prejudiced

thereby).'' The words in brackets contain the 1880 amendment with, perhaps, some from the prior amended section omitted. Necessarily, it was intended by the Legislature in so amending that section to prescribe a rule for the guidance of this court in the consideration of appeals in felony cases, and to declare the proper practice to be that, if this court is satisfied that no substantial right of the defendant has been prejudiced by the relied on error, then the judgment should not be reversed, but affirmed, although the court might conclude that the matter complained of was a technical error.

There have been two trials of this case and twenty-four jurors, duly selected, under their oaths have said that defendant was guilty, and a reading of the transcript of the evidence is most convincing that both juries arrived at the correct conclusion. In fact, any other verdict under the proven circumstances and express testimony could scarcely be reached by an honest, conscientious juror. It is my conclusion that section 340 was made to fit, and that the Legislature had in mind, in enacting it, a case exactly like this one. We have constantly applied that section since its enactment; some of the latest cases in which it was done (and they are many) will be found in volume 9 West's Kentucky Digest on page 660, and in volume 11 of the same, p. 649, and (in each reference) immediately following ''section 340,'' and which is in that portion of the two volumes of the Digest devoted to ''Statutes Construed.'' More than 45 cases from this court are cited in those references, practically all of which were rendered within the last 15 years. I will not take the time to set out any of them in this dissenting opinion, but I am confident that a reading of them will demonstrate that the present tendency is to administer the provisions of section 340, supra, in strict accord with the intention and purpose that the Legislature had in view in enacting it. In some of the cases referred to the error was no more intrinsically prejudicial than the one complained of in this case. Whether a step, a ruling, or an occurrence at and during a trial is or not substantially prejudicial should be determined by the facts and circumstances of the case, and which I might illustrate by saying that, if the testimony of the commonwealth in this case was exceedingly doubtful upon the issue of defendant's guilt, the cross-examination of the absent witness at the former trial of this case might be prejudicial,

whereas it is not so when the commonwealth's testimony, without that cross-examination, is thoroughly convincing that the jury arrived at the proper verdict. I know of no better time to adhere to the application of the section of the Code, so as to accomplish the intent and purpose of the Legislature, than now, when crime is running riot and rampant throughout the country. Of course, I concede that fundamental and constitutional rights of one criminally charged must be observed, however nonprejudicial their infraction might be, since in that case it would be incompetent for the Legislature to provide for a rule of practice dispensing with their punctual observance, and for that reason the provisions of the Criminal Code, supra, applying to felony appeals, and the kindred one embodied in section 353 of the same Code applying to misdemeanor prosecutions, may not be invoked where such rights are involved.

I therefore dissent from the opinion of the court to the extent indicated, and I am authorized to say that Chief Justice McCANDLESS and Judge WILLIS join with me therein.