## Canterbury v. Commonwealth.

(Decided May 9, 1930.)

JOHN M. THEOBOLD for appellant.

J. W. CAMMACK, Attorney General, and SAMUEL B. KIRBY, Jr., Assistant Attorney General, for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Reversing.

Under a charge of murder, John Canterbury was convicted of manslaughter and his punishment fixed at 15 years in the penitentiary. This case has been here twice before. See Canterbury v. Com., 222 Ky. 510, 1 S. W. (2d) 976, and Id., 227 Ky. 696, 13 S. W. (2d) 1035. For a statement of the facts reference is made to the first opinion.

The regular judge had represented Canterbury in the examining trial, had before the judge's election, and was hence disqualified. That fact being certified to this court, Hon. J. B. Adamson was duly designated and commissioned to preside at the April term, 1929, of the Carter circuit court and try the case. The defendant asked for a change of venue, and, after a hearing of that, this cause was sent to the Elliott circuit court for trial.

Both sides had such difficulty in securing the attendance of witnesses in the Elliott circuit court that the cause was by agreement remanded to the Carter circuit court.

During the vacation between the April term and the August term, the clerk of the Carter circuit court certified to the chief justice of this court a number of cases including this one in which the regular judge was disqualified, and the chief justice designated the Hon. Henry R. Prewitt, a regularly commissioned circuit judge, to preside at the August term of the Carter circuit court and to try these cases, which he did, and this is the first alleged error of which Canterbury is complaining.

This was not error, it was the duty of the clerk to certify this disqualification, if the parties were unable to agree upon some one to try the case. See section 971-2 Ky. Stats.

Canterbury contends Judge Prewitt had no authority to try the charge against him and he relies on Coleman et al. v. Mullins, 216 Ky. 761, 288 S. W. 701, but this situation is very different from that one. In the Coleman case, Judge Prewitt inadvertently tried a case not embraced in the order designating him as a special judge, whereas this case was embraced in the order designating him. Canterbury also cites Dial v. Com., 143 Ky. 118, 136 S. W. 139; Sublett v. Gardner, 144 Ky. 190, 137 S. W. 865; Phillips v. Phillips, 149 Ky. 206, 148 S. W. 51, and Tye v. Tinsley, 204 Ky. 219, 263 S. W. 743.

All of these decisions were under statutes that have been repealed and replaced by chapter 31 of Acts of 1926. Section 971-1 to section 971-14 Ky. Stats.

Under section 971-4, when an attorney is designated as circuit judge he is authorized to preside at the designated term and try the designated case or cases at that term, but the law contemplates that the parties shall, if they can, agree upon a special judge, and, if they cannot, that a regular judge shall be designated, if one is available; therefore if the designated case or cases are not tried at the term for which such attorney was designated and are continued to a subsequent term, such designated attorney shall not be authorized to try such case or cases at such subsequent term unless he is again so designated, or unless he was in some other manner authorized to try the designated case or cases at any subsequent term.

Hence unless Judge Adamson was again designated, his authority ceased with the close of the April term, 1929.

Canterbury's next complaint is of this order which was made when he moved to continue the case on account of absent witnesses:

"The defendant filed his affidavit stating that he is not ready for the trial of this case at this time on account of the absence of the following witnesses, Dr. L. G. Nickel, Roy Collins, Mary Riler, L. M. Canterbury, Jack A. Biggs, Charles A. Conley, the Commonwealth's attorney agreed that the evidence set out in the affidavit might be read as the deposition of each of said witnesses subject to competency and relevency *also that the commonwealth be permitted to read the cross examination of any of said witnesses heretofore in any of the previous trial of this case,* and the court being advised overrules the motion to continue this case and permits the evidence to be read as set out in the said affidavit *or all of said evidence given by said witnesses in former trial of this case,* provided said witnesses cannot be personally present in court, to all of which ruling of the court the defendant objects and excepts."

For our convenience we have italicised a portion of this order that should have been omitted.

Section 189 of Criminal Code of Practice provides:

"*The defendant may, on the trial, read such affidavit as the deposition of such absent witness or witnesses, subject, however, to exception for irrelevancy or incompetency.*"

That means just what it says. The commonwealth cannot impose conditions, nor can it, either directly or indirectly, be shown or said that the matter contained in the affidavit is not the evidence of the absent witness. See Williams v. Com., 228 Ky. 322, 14 S. W. (2d) 1077; Fleming v. Com., 224 Ky. 160, 5 S. W. (2d) 899; Barnett v. Com., 225 Ky. 585, 9 S. W. (2d) 715. See review of this question in last-cited case. Nor can evidence be offered that such witnesses do not exist. See Noe v. Com., 227 Ky. 578, 13 S. W. (2) 763.

The commonwealth usually is not required to admit the statements of such an affidavit as true (which admission may be required under certain circumstances as pointed out in section 189 of the Criminal Code), but only to admit the affidavit as evidence, that is, that the absent

witness would so testify and when admitted as evidence the commonwealth may controvert it by other evidence, but may not contradict it by showing the absent witness has made contrary statements out of court for the reason that the witness not being present, grounds for the contradiction cannot be laid. See Brown v. Com., 200 Ky. 313, 254 S. W. 891; 16 C. J. 480, sec. 866; 6 R. C. L. p. 570, sec. 31 and sec. 32.

The commonwealth's attorney should not be permitted to refer to the fact that the witness had testified once before, and that what was in the affidavit was not all the witness would state. See Wood v. Com., 229 Ky. 452, 17 S. W. (2d) 440.

By section 4645a-5, Ky. Stats., provision is made for reading from the official stenographer's transcript the evidence of an absent witness on a former trial, but that may not be done in a criminal case, without the consent of the accused.

If the whole of the evidence of such a witness may not be read, then it follows that no part of it may be read over the objection of the accused. See Mount v. Com., 120 Ky. 398, 86 S. W. 707, 27 Ky. Law Rep. 788.

We have held such transcript may be read where the witness had died since the former trial. Craft v. Com., 81 Ky. 250, 50 Am. Rep. 160; Austin v. Com. 124 Ky. 55, 98 S. W. 295, 30 Ky. Law Rep. 295; Monahan v. Clemons, 212 Ky. 504, 279 S. W. 974.

This does not mean the commonwealth is powerless and must admit everything an accused may put into an affidavit for a continuance. Under section 188 of Criminal Code the court has a discretion in the matter and may refuse a continuance without requiring the commonwealth to admit the absent witness would so testify under many circumstances. 16 C. J. pp. 457 to 510, inclusive.

When the accused makes an affidavit for a continuance, he should set out therein what he expects to prove by the absent witness. This should be fairly stated, and if, from a comparison of it with the evidence of such witness previously given, the court finds serious and unexplained conflicts, the court should be guided by what we said in Fitzgerald v. Com. (Ky.) 98 S. W. 319.

He complains of what he says was misconduct of the judge but he made no objection at the time, thereby waiving that.

He objected and excepted to this which is taken from his cross-examination:

"Q. Didn't they raid your place a week before this and the next day you went to Ashland and bought two pistols? A. I don't know how long a time it was they raided my place; they never did make any whiskey charge against me; they had charges against me but never did prove it, Mr. Yates."

This question was not entirely proper but we do not regard it as prejudicial. Evidence about or mention of this raid should be omitted on the next trial. It is not competent to ask a defendant questions whose only possible object is to arouse in the minds of the jury a suspicion that he has been guilty of other offenses than the one for which he is being tried. Maiden v. Com., 225 Ky. 671, 9 S. W. (2d) 1018; Choate v. Com., 176 Ky. 427, 195 S. W. 1080; Watson v. Com., 116 S. W. 287; Johnson v. Com., 61 S. W. 1005; Howard v. Com., 61 S. W. 756; Baker v. Com., 50 S. W. 54. When W. C. Christian was on the stand he was without objection allowed to testify as follows:

"Q. Had you seen Jess before that day? A. Yes sir. He came up from down home up to my place soft drink stand I kept there—to get a package of cigarettes.

"Q. You kept a little soft drink stand? A. Yes sir. I didn't have any. *He says I will go back down and get on the truck with dad and go up and get them.* (Our italics.)

"Q. How long before until you saw him going up on the truck that he said that? A. Just a little while.

"Q. Just left your store and went back down to the house? A. Yes sir.

"Q. And the next time you saw him he was on the truck going up town? A. Yes sir."

The record shows the accused was not present at this conversation. After Christian had been excused and three other witnesses had testified, the defendant then moved to strike out this part of Christian's evidence, and the court overruled his motion because not made in time.

Christian testified this visit to his place of business was "just little while" before Jess Canterbury was killed. That is a very indefinite expression. That may mean two minutes or it may mean two hours.

On the first trial, Christian said this was about an hour before Jess was killed, which was probably true for after that Jess returned to his father's home, he and his father had a quarrel and a fight, they threw a lot of pop bottles at each other, Jess drew a pistol on his father, he was disarmed, thereupon he left saying: "By G—d I have got another, I'll get it and kill that s— of a b—." While he was gone the accused, aided by his daughter, loaded up his truck and statrted away. Jess returned, pursued his father, overtook him, jumped on the running board of the truck, and was killed. Probably Christian's estimate of an hour, as the time intervening between the visit of Jess to his place and the fatal shooting, is about correct.

On the first trial, when Christian was asked about this conversation relative to going up town on the truck to get some cigarettes, the defendant's objection was sustained. On the second trial, the commonwealth did not ask him anything about it. On the third trial, the question was asked and answered and later defendant moved to exclude it. We are satisfied this evidence should not have been admitted. On account of the intervening time between this conversation and the fatal shooting, this cannot be regarded as a part of the res gestae. If this shooting had not resulted fatally, Jess Canterbury would not be permitted, in a prosecution of defendant for shooting him, to testify to what he told Christian an hour before, if defendant objected.

If Jess Canterbury could not himself tell this if alive, we can see no reason why Christian should be allowed to tell it after Jess Canterbury is dead. If defendant had objected when this evidence was offered, his objection should have been sustained, but he did not and our question is: Should his motion to exclude it have been sustained?

The accused did not move to exclude the whole of Christian's evidence if he had, his motion should have been overruled for some of it was admissible, but his motion to exclude was directed solely to that part which

we have copied. To make this reversible error it must have prejudiced the substantial rights of the accused, and we must consider that question briefly.

The accused admits the slaying of his son, and claims it was excusable because done in self defense.

The accused and his wife had quarrelled the day before and had agreed upon a separation. Jess was not present. He came in while the accused was engaged in removing certain articles from the home, and the fight we have mentioned followed. After the accused had loaded these goods on his truck and had started away, Jess pursued him and jumped on the running board of the truck, and the accused says that Jess was infuriated and said to his father, the accused: "Turn around and take these things back and put them where you got them, or I'm going to shoot your G—— d—— brains out." The accused kept going, whereupon the accused says Jess drew a pistol, then the accused drew his pistol and shot and killed his son.

We have often written that the right of a person to take life in self defense arises from his belief in the necessity for it, and from the reasonableness of the grounds of his belief as judged by the danger as it appears to him, and not from the belief of the jury as to the necessity of it, or the belief of any one else as to that necessity. Lewis v. Com., 224 Ky. 502, 6 S. W. (2d) 502; Fuson v. Com., 230 Ky. 761, 20 S. W. (2d) 742; Biggs v. Com., 164 Ky. 223, 175 S. W. 379, Ann. Cas. 1916A, 1096.

What Jess said to Christian about cigarettes and getting on the truck with his father to go get them, was said out of the presence and hearing of the accused; it indicated no malicious or sinister purpose on the part of Jess in getting on the truck, but that he got on there in an innocent and friendly frame of mind. Since the guilt of the accused is to be measured by the appearances to him, the admission of this evidence regarding cigarettes and the purpose of Jess to get on his father's truck and go get them, a matter and a purpose known to Christian but unknown to the accused, was necessarily prejudicial.

Judgment reversed.

The whole court sitting.