## Miller v. Commonwealth.

October 28, 1947.

George K. Holbert, Judge.

Haynes Carter for appellant.

Eldon S. Dummit, Attorney General, and H. K. Spear, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Reversing.

Miller and his wife Anna May were charged by indictment with the crime of grand larceny; a joint trial resulted in a verdict of guilty only as to appellant, the jury fixing the penalty at confinement in the penitentiary for one year. On appeal he contends: (1) That the proof was insufficient to take the case to the jury; (2) error in admitting incompetent and prejudicial evidence.

John Stevenson, prosecuting witness, who lived on a farm in Hardin County, testified that in August 1945 he was looking for someone to help in his tobacco crop; appellant agreed, and a few days later he and his codefendant came to the home in a wagon carrying some household goods. The two remained there a short time, when according to appellant a disagreement arose, appellant insisting that they were told to leave.

On September 19, appellant, Anna May and her mother, Mrs. Smallwood, came to Stevenson's home with a wagon and loaded some household articles, some being packed in cartons. Stevenson was there when the party arrived, but he and Smallwood, father of Anna May, left and did not return until the afternoon, when Miller and the others were still loading. Stevenson said he went upstairs and found some "bed clothes and things were gone." He says he went out as the last box was placed on the wagon, and the party started off. He called to the driver to stop, but says he drove "faster." It appears that Noah Smallwood had not left with the wagon, and Stevenson told him the party had taken two blankets and some bowls which belonged to him. Smallwood caught up with the wagon, and the daughter informed of this claim sent these articles back, though she then insisted that they were given to her by Stevenson, and so testified on the trial; Stevenson denied the statement.

Stevenson testified that in the next few days he observed that a great number of small articles were missing. He does not claim in any wise that he saw any of his effects on the wagon, or being placed there, or thereafter, but insists since the Millers brought few articles, and the departing wagon was loaded with five or six cartons, coupled with the fact that he found arti-

cles missing, that appellant and his codefendant carted them away; these facts do create an inference by circumstantial evidence as would warrant the taking of the case to the jury.

Stevenson consumed considerable time in naming and describing each article which he found to be missing. He also, in a way, fixed the value of each article, such as bedclothes, table and kitchen-ware, groceries, towels, etc., at more than sufficient value to warrant an indictment for grand larceny.

The two defendants testified and introduced in their behalf the man who drove the wagon when the Millers moved to the Stevenson home, and Noah Smallwood, father of Mrs. Miller. The two accused were asked about each article they removed and identified them as being the same articles which they had taken from the Smallwood home where they formerly lived. They testified that some of the articles were bought by them, and others were given to the daughter by her mother and father. The driver of the wagon who moved them to the Stevenson home described the load, and said that he had moved articles in five or six cartons or boxes.

We have refrained from extended detail of the evidence, since we have concluded that the court was in error in permitting certain evidence to be brought out by the commonwealth's attorney, and other testimony, supposedly in rebuttal. When Miller was on the stand and had testified that he and Anna May had lived at Smallwood's home during the summer, prior to moving to Stevenson's, he was asked: "Is it not true that you were not married to the Smallwood girl at that time?" The court overruled an objection, and he answered that he did not remember when they were married. He was then asked: "Is it not true that you were married the first of this year, 1946?" The court overruled objection, and appellant, after saying that he was married in Elizabethtown, was asked: "But you had lived with the Smallwood girl during the summer at her father's home, and it was there you began to acquire your household goods and furniture?" Appellant did not reply; counsel objected and moved the court to discharge the jury; the court overruled the motion but admonished the jury not "to consider the questions as to where the

parties, or how they lived before they were married, or to let the questions have any influence in any way." As this admonition is framed it may be doubted that it would have the effect of disabusing the minds of the jury that appellant and his co-defendant had been guilty of some criminal offense. Notwithstanding the ruling above, the commonwealth introduced the marriage records of the clerk's office and read it into the record; this showed that the ceremony was performed in January 1946. There was objection and motion for discharge of the jury on the ground that it was produced for the purpose of prejudicing the jury. The court overruled, and denied the motion without admonition.

Counsel for the commonwealth, rather mildly, takes the position that appellant had in his testimony referred to Anna May as being his wife, and the testimony was competent, but at the times appellant mentioned his co-defendant as being "my wife" the two had been married, since his evidence was given in November of 1946.

Section 597, Civil Code of Practice, sets out particularly how a witness may be impeached; one method is by "evidence that his general reputation for untruthfulness or immorality renders him unworthy of belief; but not by evidence of particular wrongful acts, except that it may be shown by the examination of a witness, or record of a judgment, that he has been convicted of felony."

Appellant had said nothing in answers to the questions relating to his marriage which called for any contradiction, but aside from this, we are of the opinion that the questions, and particularly the introduction of the marriage record, were, as the procedure was, not only incompetent but served to prejudice the minds of the jury. Notwithstanding the minimum penalty was inflicted, it may be the jury in determining guilt allowed the objectionable evidence to turn the tide, since the conflicting evidence made the question of guilty or not guilty a rather close one.

The rule and its exceptions, in respect of this character of evidence, is well established. Evidence of offenses other than the one for which the accused is being tried, is inadmissible except to show motive, intent, guilty knowledge, a plan, concealment of other offenses

related to an offense inseparably connected with the crime charged. Marcum v. Com., 254 Ky. 120, 71 S. W. 2d 17.

Among cases in which the rule was applied, where the facts did not justify the application of the exceptions, may be noted: Karsner v. Com., 235 Ky. 710, 715, 32 S. W. 2d 43; Crawford v. Com., 241 Ky. 391, 394, 44 S. W. 2d 286; Frasure v. Com., 245 Ky. 127, 53 S. W. 2d 204; Conley v. Com., 273 Ky. 486, 117 S. W. 2d 189, and in Canterbury v. Com., 234 Ky. 268, 27 S. W. 2d 946, applying the rule, we said that the defendant should not be asked questions where the only object was to create suspicion in the mind of the jury that accused is guilty of other offenses, unless they be of the excepted class.

The offense sought to be brought to the minds of the jury could not by any stretch of imagination be interwoven into the crime of larceny. We are of the opinion that the evidence, and questions sought to illicit answers which tended to show that appellant was guilty of some crime against society, were not admissible and were prejudicial.

Judgment reversed with directions to grant appellant a new trial in conformity herewith.